**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOWARD JOHNSON COMPANY, Respondent.**

No. 14063.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1963.

Decided May 15, 1963.

Elliott Moore, National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, National Labor Relations Board, on the brief), for petitioner.

Daniel O. Steele, Wollaston, Mass., for respondent.

Before STALEY and SMITH, Circuit Judges, and SHAW, District Judge.

STALEY, Circuit Judge.

The sole question presented by this case is whether respondent Howard Johnson Company in operating a restaurant on the New Jersey Turnpike acts in the capacity of a "state or political subdivision thereof" and is therefore not an "employer" as that term is defined in the National Labor Relations Act.[1] Respondent does not challenge the Board's finding of a refusal to bargain with the certified representative of its employees, but urges that under the terms of its operating agreement with the New Jersey Turnpike Authority the latter has retained such control over the enterprise that respondent is merely its agent or alter ego.

---

1. "§ 152. Definitions
"When used in this subchapter—
\* \* \* \* \*

"(2) The term 'employer' \* \* \* shall not include \* \* \* any State or political subdivision thereof \* \* \*." 29 U.S.C.A. § 152.

1

The Board found that the restaurant employees are "hired and fired and paid by the Respondent * * * and under its direction, control and supervision * * *." Respondent does not challenge that finding in this court but, as previously indicated, points to various provisions of the operating agreement which it says show that the Authority, as an arm of the State of New Jersey, controls the operation of the restaurant.

We agree with respondent that the element of control of the enterprise is important in deciding the issue before us, but we think control of the employment relationship is of paramount significance. As succinctly put by the Board in an earlier case, "The decisive elements in establishing an employer-employee relationship are complete control over the hire, discharge, discipline, and promotion of employees, rates of pay, supervision, and determination of policy matters." Roane-Anderson Co., 95 N.L.R.B. 1501, 1503 (1951). This is in accord with the analysis of the Supreme Court in N.L.R.B. v. E. C. Atkins & Co., 331 U.S. 398, 67 S.Ct. 1265, 91 L. Ed. 1563 (1947), where the Court said:

"The crucial problem in this case, however, is whether the militarization of the plant guards changed their status as employees as a matter of law so as to prohibit the Board from extending to them the benefits of the Act which they would otherwise have. The short answer to that problem is that militarization as such does not necessarily change the status of plant guards. It may or may not bring about a change, depending upon the particular circumstances. The militarization may be a qualified one; the employer may retain power to fix wages, hours, and other conditions of work; the need and desirability for collective action on the part of the guards may exist as to the matters over which the employer retains control; and a recognition of the statutory rights of the guards may be entirely consistent with their military obligations. If that is the case, the guards remain employees for purposes of the Act. But if the militarization is such as to transfer to the Army all the matters over which the employer would normally have control, matters which would form the basis for collective bargaining as contemplated by the Act, the guards may lose their status as private employees within the purview of the statute." 331 U.S. at 405–406, 67 S.Ct. at 1269–1270.

Moreover, as stated by the Court in that case, the Board's determination must be accepted if supported by the evidence and consistent with the law.

We think an application of these principles to the facts of this case compels the conclusion that respondent operates its restaurant as an independent contractor of the Authority, and has retained such control over the elements of the employment relationship that it is an "employer" within the meaning of the Act.

To support its position respondent cites, among others,[2] the following provisions of the agreement:

(1) Respondent must operate on a 24 hour basis unless the Authority approves a more limited operation.

(2) Respondent must make ample provision for speedy and convenient handling of patronage during all hours.

(3) The Authority may take charge and operate the restaurant if respondent is unable to do so because of a "strike or other labor difficulties."

(4) The range of prices for food, beverages, merchandise and services

---

2. Respondent cites numerous other terms of the agreement the relevance of which is at best *de minimis* to the determination of the issue. These include the fact that the Authority controls the approaches to the restaurant and approves the decoration and redecoration of the interiors.

shall be comparable to the prices charged in the general vicinity of the turnpike.

(5) The agreement defines what constitutes gross sales.

(6) The buildings and substantially all of the equipment are owned by the Authority.

(7) The Authority may terminate the agreement upon the failure of respondent to remedy any unsatisfactory condition, including quality of service, efficiency, cleanliness, safety, and sanitation.

(8) The Authority has the right to inspect and audit respondent's records.

We think that these provisions, whether viewed individually or in their totality, do not impair the Board's finding that respondent is an independent contractor and not an agent of the Authority. None of them manifest an attempt by the Authority either to control the relationship between respondent and the restaurant workers or to impose terms and conditions of employment. On the contrary, the clause providing for the operation of the restaurant by the Authority in the event of a "strike or other labor difficulties" constitutes a recognition that the workers are employees of respondent and not state employees. If the parties considered them to be state employees, the clause would be meaningless in its context, for under New Jersey law such employees do not possess the right to strike. Donevero v. Jersey City Incinerator Authority, 75 N.J.Super. 217, 182 A.2d 596 (1962).

Nor do the other provisions cited by respondent provide any support for its argument. Rather than establishing Howard Johnson Company as the alter ego of the state, they appear to be nothing more than standard conditions which one in the position of the Authority would include in an agreement with an independent contractor for the efficient, orderly operation of a turnpike restaurant. Certainly they are not inconsistent with the independent contractor

status implicit in the admitted fact that it is Howard Johnson which hires, fires, supervises, controls, and directs the restaurant employees. In N.L.R.B. v. E. C. Atkins & Co., 331 U.S. 398, 67 S.Ct. 1265, 91 L.Ed. 1563, even evidence of some control by the Federal Government over these decisive elements was held insufficient to negate the employer-employee relationship. Further support for our conclusion can be found in N.L.R.B. v. Carroll, 120 F.2d 457 (C.A.1, 1941).

Respondent also refers to Site Oil Co. of Missouri, 137 N.L.R.B. No. 145 (1962). However, that proceeding merely emphasizes that each case depends upon an assessment of its particular facts. There the Board concluded that the lessor of a gasoline station exercised such control over all aspects of the lessee's operations that the latter was its employee and not an independent contractor.

The order of the Board will be enforced and a form of decree may be submitted.