In the Matter of the NEW YORK PUBLIC LIBRARY et al., Petitioners, *v.* NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

First Department, July 9, 1974.

*Corbin & Gordon* (*Sol Neil Corbin* and *Louis Lauer* of counsel), for the New York Public Library and others, petitioners.

*Julius Topal* (*Joan Stern Kiok* of counsel), for David Beasley and others, petitioners.

*Martin L. Barr* for New York State Public Employment Relations Board, respondent.

*Graubard Moskovitz McGoldrick Dannett & Horowitz* (*Emanuel Dannett* and *Robert M. Schanzer* of counsel), for Richard M. Brower, respondent.

*Adrian P. Burke, Corporation Counsel* (*L. Kevin Sheridan* and *Milton H. Harris* of counsel), for City of New York, respondent.

*Norbert M. Phillipps* (*Robert T. Snyder* of counsel), for New York State Labor Relations Board, *amicus curiae*.

TILZER, J. This article 78 proceeding is brought to review a determination of the New York State Public Employment Relations Board (hereinafter referred to as "PERB") dated April 2, 1973, wherein it was found that the petitioner New York Public Library, Astor, Lenox and Tilden Foundations (hereinafter referred to as the Library), and the City of New York committed an unfair labor practice by agreeing to deduct agency shop payments from the salaries of library employees pursuant to an agreement with District Council 37 (the Union).

On August 26, 1971, Richard Brower, a Library employee in the title of Library Technical Assistant IV, filed the above-

described unfair labor charge with PERB. A hearing was thereafter held, the parties thereto being the Library, the charging party, and the Union. The City of New York took no part in the hearing and indeed, the charging party stated that it was not his contention that the city was the employer or joint employer of library employees. In fact, the parties stipulated that the Library was the sole employer.

After a lengthy hearing, and upon comprehensive findings, which we find to be fully supported by the record, the hearing officer concluded that the Library was "not a 'government' or 'public employer' within the meaning of § 201.6 of the Act." Accordingly, since PERB lacked jurisdiction, the hearing officer dismissed the charge.

Subsequently, when objections to the hearing officer's report were taken, the city, in a letter transmitting its brief *amicus curiae* requested that the board "consider this letter an application pursuant to Civil Service Law § 201 6(b) for a determination that the City is a joint public employer with the respondent library". (Letter from city dated August 14, 1972.) The board granted the application and concluded that the Library and the city were joint employers for the purpose of the Taylor Law. While the board stated that it was unnecessary to determine whether otherwise the Library would be a public employer, it did indicate (in a footnote to the opinion) that if the question were reached, it would find that the Library was a public employer. Member Crowley disagreed with the other two board members and found that the "Library is neither a public employer nor part of a joint public employer". Despite the board's conclusion, it nevertheless dismissed the charge since it found that jurisdiction should be deferred to the New York City Board of Collective Bargaining, provided that if such agency rejected jurisdiction, PERB would, upon motion of any party, reassert jurisdiction. However, when the jurisdiction of the city agency expired prior to its making any determination in the matter, PERB again took jurisdiction and upheld the charge, with member Crowley concurring on constraint of the board's prior determination.

We find that PERB was in error in holding that it had jurisdiction since we believe that the record fails to establish any reasonable basis upon which to conclude that the city is the employer of the Library employees, joint or otherwise, or that the Library itself is a government or public employer within the meaning of the act.

In determining whether jurisdiction was properly found, it is important to understand the manner of operation of the Library as well as its historic backgrounds. The Astor, Lenox and Tilden Foundations were incorporated respectively in 1849, 1870, and 1887, pursuant to special acts of the Legislature, for the specific purpose of receiving substantial gifts from their sponsors to be used to establish and operate a library (L. 1849, ch. 1; L. 1870, ch. 2; L. 1887, ch. 85). The New York Free Circulating Library was incorporated in 1884 (L. 1884, ch. 166), as successor to a society previously organized under the laws relating to benevolent and literary societies, for the purpose of establishing and maintaining a system of free circulating libraries. Each of the libraries was subject to the direction and management of a board of trustees which was self-perpetuating. In 1895, pursuant to enabling legislation (L. 1892, ch. 541), the Astor, Lenox and Tilden Libraries entered into an agreement of consolidation (agreement dated May 23, 1895) with the New York Free Circulating Library, joining such new corporation several years later. (Agreement dated Jan. 11, 1901.) The corporation thus created was known as "The New York Public Library, Astor, Lenox and Tilden Foundations", and ranked as one of the largest libraries in the United States.

Finally, in 1901 Andrew Carnegie offered to contribute $5,200,000 to the Library to undertake the construction of 65 branch libraries in New York City upon certain conditions, including the city's commitment to furnish the " sites for these branches for the special benefit of the masses of the people, as it has done for the Central Library,[1] and also agree in satisfactory form to provide for their maintenance as built ". (Letter from Andrew Carnegie dated March 12, 1901.) On April 26, 1901, the Legislature (L. 1901, ch. 580) authorized the city to acquire the necessary sites when approved by a Carnegie representative; to contract with a person approved by Carnegie for erection (without cost to the city) of the buildings; and to provide for the maintenance of the branch libraries once built.

Acting pursuant to such authority, the city and the Library (as Carnegie's agent) entered into an agreement dated July 17, 1901, which required the city to furnish the sites and " to provide for the maintenance of the free public branch libraries to be erected * * * and to that end to provide in each year

---

1. The City had previously erected the main building in Bryant Park and entered into an agreement with the Library permitting its use and occupation of the premises for so long as it maintained thereon a public library and reading room and continued to carry out the purposes of the corporation.

in the annual budget and tax levy of said city a sum not less than ten per centum of amount expended by said Andrew Carnegie ''. The Library in turn agreed to erect the buildings and '' thereafter to conduct and carry on in the same respectively, with funds to be provided by [the City] * * * free public libraries * * * and to devote the same to the use of the public.''

The basic agreement of 1901 provided that the Library: '' shall appoint, direct, control and remove all persons employed within the said buildings respectively and in the care of the same.''

It was further provided, except for certain limitations not here relevant, that the Library: '' shall exercise direction and management over the affairs of the several library buildings, and the books, collections, and appurtenances.''

The Library as presently constituted is described by its director as '' a multipurpose library unique among other libraries, combining research, library services not customarily found in the university library nor national libraries * * * with a typical public library system, including branch library services and various circulating and reference services.'' The operations of the Library are directed by a self-perpetuating board of directors comprised of 25 members, only 3 of which are included by virtue of their city office, i.e., Mayor, Comptroller, President of the City Council. From an administrative point of view the Library's functions are divided into its branch library system and its research library system. The branch libraries total 84 in number (plus several mobile units) and are located in the Counties of New York, Bronx and Richmond. The major source of funds used in the operations of the branch system comes from the city and in fact, in the fiscal year 1969–70, the city provided approximately 80% of such funds (approximately $13,400,000 of a total income of about $17,400,000).

The operations of the research division[2] (the charging party is employed in that division) present a different picture, for in the fiscal year ended June 30, 1970, the city contributed only about 10% of a total budget of over $6,500,000, the bulk of the funds being provided by the private endowments.

As found by PERB, there is little doubt (certainly with relation to the branch system) that the Library is virtually entirely dependent upon the city for its operations. Hence, to obtain funds the Library must submit proposed budgets in the form and time specified by the city, which budgets must be approved

2. Located in 3 buildings: 42nd Street and 5th Avenue; the annex on West 43rd Street; and the research library for the performing arts at Lincoln Center.

by a city examiner and reviewed by the City Bureau of the Budget. The Library's budget is then included in the Mayor's executive budget and then submitted to the Board of Estimate. The city's line item budget, in practice, determines the number of employees for which the city provides reimbursement and it is to be noted that Library *voluntarily* has come under the city's career and salary plan. Moreover, approximately two thirds of the employees are in positions funded by the city and the employees' retirement benefits are similarly funded by the city. Accordingly, for practical reasons the extent of financing agreed to yearly by the city will determine to a great extent the scope and limitations of the branch library systems and will also have some impact upon the research division. Nevertheless, the Library is not bound by city budget limitations for it may seek financing elsewhere, and in fact, the record indicates that the Library has undertaken projects not approved or funded by the city. And, further, when the city imposed a job freeze, it was not applicable to the research division and affected the branch libraries only because of its practical consequence.

We now come to the issue of whether the city, because of the relationships above described, may be considered a joint employer of the Library personnel within the meaning of the Taylor Act and additionally, whether the Library is a public employer within the meaning of the act.

The statutes which govern such determinations provide as follows:

" The term ' government ' or ' public employer ' means (i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission, or public benefit corporation, or (vi) any other public corporation, agency or instrumentality or unit of government which exercises governmental powers under the laws of the state." (Civil Service Law, § 201, subd. 6, par. [a].)

" Upon the application of any government, the board may determine that the applicant shall be deemed to be a joint public employer of public employees in an employer-employee nego-tiating unit *determined pursuant to section two hundred seven of this chapter* when such determination would best effectuate the purposes of this chapter." (Civil Service Law, § 201, subd. 6, par. [b].)

We shall first consider the status of the city. As stated at the outset, the matter was tried upon a stipulation that the Library was the sole employer. Nevertheless, PERB granted the city's application which was first made during the appellate process and found the city to be a joint public employer of the subject employees. Consideration of the application at that stage in the proceedings presented difficulties since the record was not framed and the matter was not prepared to meet such issue. Moreover, if it is considered that the Library is not otherwise a government or public employer within the meaning of the Taylor Act, then the effect of granting the application would mean that a public employer and a private employer may together constitute a joint public employer.[3] Although the statute is silent in this respect, its wording, nevertheless, creates grave doubt as to such proposition. Paragraph (a) of subdivision 7 of section 201 of the Civil Service Law defines "public employee" as "any person holding a position by appointment or employment in the service of a public employer". Although the term public employer is defined in the statute, there is no definition of the term joint public employer, and the phrase joint employer does not appear. It would seem, however, at least on its face, that the statute presumes that each of the entities comprising the joint public employer be in its own right a public employer of public employees within the meaning of the act.[4]

However, in view of our conclusion that in any event the record fails to provide any basis to conclude that the city is the employer herein, joint or otherwise, we need not decide whether the city's application was considered in violation of lawful procedure, or whether the Taylor Act can be interpreted to permit the phrase joint public employer to include a governmental and private employer.

As noted above, not only is the Library a separate and distinct body from the city, but by contract it (the Library) retains general control over the direction and management of its own affairs. And more specifically, by contract and in practice, the

3. Such is implicit in the opinion of PERB, since it stated that having determined that the Library and city constitute a joint employer for the purposes of the Taylor Act, it was irrelevant whether the Library standing alone is a public employer.

4. Member Crowley stated that he did "not read CSL § 201.6(b) to authorize us to find that two entities, one a government and the other not a government, are a joint employer. We must first find that the employees are public employees and that both employing entities are public employers before we can reach the question of joint employment."

hire, discharge and promotion of the employees, as well as the supervision of their daily and over-all duties are vested in the Library through its self-perpetuating Board of Trustees. There is no proof in the record that the city interferes in these matters or has the power to do so. Hence, under all the traditional tests it is the Library that is the employer and not the city. (*Matter of New York State Labor Relations Bd.* v. *Hudson,* 293 N. Y. 671; *Matter of Sullivan Co.,* 289 N. Y. 110; *Matter of Morton,* 284 N. Y. 167; *Matter of Hardy* v. *Murphy,* 29 A D 2d 1038.) Nor under those tests, can it be said that the arrangement constituted a joint employment of library personnel.

Indeed, the relationship of the Library and the city has been considered by the courts on previous occasions and each time it has been recognized that the Library has independent identity and that its personnel were not city employees. Accordingly, in *La Marca* v. *Brooklyn Public Library* (256 App. Div. 954)[5] the question presented was whether the city was liable for damages arising out of the negligence of a janitor employed to care for the library building. The Appellate Division in affirming the dismissal of the complaint stated: "The building was owned by the city of New York, but was operated and controlled by the Brooklyn Public Library, a corporation chartered by legislative act * * * The plaintiff's evidence showed that the city had no control of any part of the building, and that the library employees were not in the employ of the city". Similarly, in *Matter of Brooklyn Public Library* v. *Craig* (201 App. Div. 722, 723) the court noted that the library "is not a branch of the city government, but is a distinct and separate corporation, receiving budgetary contribution from the city."

In addition to the court decisions on this subject, the Corporation Counsel has consistently stated that employees of the public libraries are not employees of the city. Several of those opinions are summarized below. (1) Employees of the libraries cannot be placed under civil service since the Civil Service Law applies only to officers and employees of the State, cities or other civil divisions. (67 Opns. Corp. Counsel, p. 70, 1925); (2) employees of the libraries were not subject to the Lyons Residence Law since the libraries were distinct entities. (85 Opns. Corp. Counsel, p. 496, 1938); (3) employees of the libraries were not officers or employees of the city within the meaning

---

5. The Brooklyn Public Library has a similar relationship to the city as does the petitioner and the rationale in that case is applicable here.

of article 3 of the Retirement and Social Security Law. (Opns. Corp. Counsel No. 104069 [1957].)

Nevertheless, respondent PERB urges that the traditional definitions applied in ascertaining whether an employment relationship exists are not controlling here and that the court should adopt a broader definition; one which would accord with the history and purpose of the Taylor Act and which would accordingly effectuate its purpose, i.e., " the promotion of harmonious and co-operative relationships between government and its employees " (*Matter of Civil Serv. Employees Assn.* v. *Helsby,* 31 A D 2d 325, 330, affd. 24 N Y 2d 993).

While we recognize the difficulties involved in applying definitions which have emanated from matters involving other considerations, nevertheless, those definitions must serve as a guideline, and it must be assumed that the Legislature was well aware of the meaning commonly accorded the terms used by it. And in any event, though we agree that a somewhat broader view should be taken with respect to whether an employer-employee relationship exists when dealing with a statute governing labor relations and that no common-law criterion is in and of itself controlling (*Board* v. *Hearst Pub.,* 322 U. S. 111), it does not necessarily follow that the purposes of the Taylor Act would be effectuated by so broadening the scope of the definition of " employee " that it would include all those persons who are responsible not to a governmental body of one form or another, but to a private employer, only because their actual employer may be to a degree dependent upon a governmental body for financial support.[6] Not only are such employees not typically considered as being employed by government, but there is no indication that the Taylor Act was intended to be applied in such circumstances.

Although PERB concluded that there was present more than simple financial dependence, in view of the " high degree of control by the City of the purpose for which the funds may be applied  *  *  * and the extensive integration of the library's employee relations program into the employee relations program of New York City ", we cannot agree. The factors mentioned by PERB were merely the procedures utilized and agreed

---

6. Financial control in and of itself is insufficient to establish an employment relationship. See, e.g., *Matter of Custodial Engineers,* 4 SLRB 1102; enforced *Matter of New York State Labor Relations Bd.* v. *Hudson,* 37 N. Y. S. 2d 304, affd. 267 App. Div. 763, affd. 293 N. Y. 671; *Institute of Public Administration,* 33 SLRB No. 4. Such was implicitly recognized in the majority opinion of PERB.

to by the parties in order to carry out the basic agreement and related solely to financial matters. As for example, while the Library personnel participate in the city retirement programs, it is not as a matter of right as city employees, but pursuant to separate and voluntary agreement. In short, the strong financial dependence of the Library upon the city, in and of itself, does not transform the Library personnel into city employees even under the Taylor Act[7] and it does not make the city a joint employer.

Nor do the cases cited by PERB in support of the contention that the definitions with respect to " employee " and " employment relationship " be broadened herein, totally ignore those traditional factors relied upon in determining the identity of the employer. In various of the cases cited there were present in addition to financial relationship, certain elements of control. Accordingly, in *N. L. R. B.* v. *Greyhound* (368 F. 2d 778), where it was determined that Greyhound was a joint employer of persons on the payroll of the subcontractor, Greyhound possessed the right to establish work schedules, assign employees, and indeed, Greyhound's own employees closely supervised the daily activities of the subcontractor's employees. In *Herbert Harvey, Inc.* v. *N. L. R. B.* (385 F. 2d 684) the court found that the World Bank had authority to issue work orders to the subcontractors' employees and did so extensively. Additionally, the bank's hiring standards had to be complied with and it had a veto power with respect to hire and discharge. Even, in *Board* v. *Hearst Pub.* (322 U. S. 111, *supra*) where the court stated that determination of whether one is an employee of another must be considered in relation to the history, terms, and purpose of the legislation involved and that traditional definitions did not necessarily govern, it nevertheless noted certain areas of control over the subject employees not here present, including hours on the job; job location; efforts on the job; amount of papers required to be sold by the individual employee. Here, even departing from traditional definitions and factors, there are still lacking any facts upon which to come to the conclusion that the city in any manner is the employer of library personnel, joint or otherwise.

In addition to the above, we also note that there are several other considerations which indicate that the city should not be

---

7. The situation is not unlike "cost plus" contracts which do not preclude the contractor from being the employer of its own employees; *Labor Bd.* v. *Atkins & Co.*, 331 U. S. 398; *N. L. R. B.* v. *Johnson Co.*, 317 F. 2d 1; *Institute of Public Administration,* 33 SLRB No. 4).

considered as a joint employer of the Library personnel within the meaning of the Taylor Act. As already noted, we do not believe that the purposes of the act would necessarily be effectuated by extending its scope in the manner requested by PERB. Neither the act itself nor the Taylor Report (Report of the Governor's Committee on Public Employee Relations, George W. Taylor, Chairman, 1966) indicates such breadth of purpose. Indeed, considering the fact that modern governments are now involved in virtually every facet of economic life, and that their financial contributions extend to institutions rendering services not typically recognized as purely governmental in nature, acceptance of the doctrine which is in effect urged would result not merely in increasing PERB's jurisdiction but would lead to a corresponding diminution of the jurisdiction of the State Labor Relations Board, which, as compared to the special jurisdiction granted to PERB, is an agency of general jurisdiction limited only insofar as there are specific exclusions from the scope of that Act. (Labor Law, §§ 600, 715.) Indeed, it would appear that the Taylor Act should to an extent, be construed in relation to the provisions of the New York State Labor Relations Act and at least as partially supplementing the Labor Relations Act. Whereas the Taylor Act covers public employees, the Labor Relations Act covers all employees except those specifically exempted from its provisions, which exemption includes "employees of the state or any political or civil subdivision or other agency thereof". (Labor Law, § 715.) In this respect the contention of the State Labor Relations Board that the Taylor Act intended to cover only those employees excluded from the jurisdiction of the Labor Relations Act appears to have merit. And, it would further appear that pursuant to the wording of the Labor Relations Act as amended in 1968 (Labor Law, § 715), and various rulings of the State Labor Relations Board, there is every indication that the Labor Board would assert jurisdiction over these employees. (Cf. *Custodial Engineers,* 4 SLRB 1102; enforced *Matter of New York State Labor Relations Bd.* v. *Hudson,* 37 N. Y. S. 2d 304, affd. 267 App. Div. 763, affd. 293 N. Y. 671, *supra*; *Matter of Brooklyn Institute of Arts and Sciences,* 33 SLRB No. 20.)

Moreover, a reading of the Taylor Report also indicates that an important consideration in determining whether one is an employee within the meaning of the Taylor Act, is whether he has civil service status. The Taylor Report makes constant reference to the civil service system and the impact of labor relations upon it. Indeed, it was noted that because of various

statutes, the area of labor negotiation with respect to civil service employees may be highly limited. The employees herein do not have civil service status and accordingly, to subject them to certain controls and restrictions imposed upon governmental workers (as contained in the Taylor Act) without affording them corresponding benefits given civil service employees, would constitute an injustice. (Cf. *White* v. *Boland,* 254 App. Div. 356.)

We finally come to the issue which was actually the subject of the hearing, i.e., whether the Library itself is a government or public employer within the meaning of the act. We note, initially, that the hearing officer's findings relating to this issue are fully supported by the record, and we agree with his well-reasoned conclusions. Accordingly, we will only summarize our conclusions as to this aspect of the case.

Clearly, the Library does not fall within any of the first three clauses of section 201 (subd. 6, par. [a]) of the Civil Service Law. We will therefore consider the remaining subdivisions.

(IV) "*A public improvement or special district* ".

Although it does not appear that the charging party urged that the Library falls within this category, such argument was raised before the board and it is argued on this appeal that the Library is indeed "a public improvement". The contention is based upon section 20-e (subd. 2, par. [b]) of the General City Law which defines a public improvement to include "an archives and records center, a museum * * * and other public structures and facilities intended for the use of state or city employees and the public at large ". Aside from the fact that the Taylor Act refers to a *public improvement district* as opposed to a *public improvement,* the contention is, nevertheless, without significance. As stated by Member Crowley: "This cannot be accepted; such a public improvement is an improved piece of real estate that is owned by a city. A public employer cannot be a structure or a facility." And certainly, the Library is not a public improvement district, which is an instrument utilized by local government to render services or capital improvements within a certain geographic location. (See e.g., Town Law, § 190; Real Property Tax Law, § 410.)

(V) "*A public authority, commission, or public benefit Corporation* ".

Since clearly the Library is not an authority or commission, the only term of possible relevance under this subdivision is "public benefit corporation." The term public benefit corporation, however, is defined in subdivision 4 of section 3 of the

General Corporation Law as "a corporation organized to construct or operate a public improvement wholly or partly within the state, the profits from which enure to the benefit of this or other states, or to the people thereof". This category, too, is clearly not applicable to the Library.

(VI) "*Any other public corporation, agency or instrumentality or unit of government which exercises governmental powers under the laws of the state*".

In considering the meaning of "public corporation" PERB has previously followed the definition of that term as set forth in *Van Campen* v. *Olean Gen. Hosp.* (210 App. Div. 204, 206) as follows: "Public corporations are the instrumentalities of the State, founded and owned by it in the public interest, supported by public funds and governed by managers deriving their authority from the State." (See *Matter of Nassau Library System,* 1 PERB 3171; *Matter of North Country Library System,* 1 PERB 3173.) The Library, as noted earlier, is a private, separate legal entity controlled by an independent Board of Trustees and it certainly does not come within the above definition. Nor can we conclude that the Library is any other agency[8] or instrumentality or unit of government. In the *North Country Library System* case (*supra*) PERB noted that the Library therein was not an agency of government since its board of trustees was not appointed by any government and the Library existed separate and apart from any governmental agency. And, PERB also stated with respect to the phrase "instrumentality or unit of government which exercises governmental powers" as follows: "Such powers are those which may be exercised *only* by the state (in contradistinction to proprietary powers, which are exercisable by individuals or the state) or by a lesser governmental body to which such powers have been delegated by the state. By way of example, they would include the power to tax, to enact general legislation which is judicially enforceable, to take by eminent domain, and

---

8. The charging party also urges that the Library is a nonmayoral agency of the City of New York in view of the definition contained in subdivision 2 of section 1150 of the New York City Charter, which defines an agency as any corporation "the expenses of which are paid in whole or in part from the city treasury." We agree with the hearing officer's views in this respect which are as follows: "I cannot accept so broad a definition of 'agency' as the charging party proposes for the purpose of determining the jurisdiction of this Board. If such an interpretation were adopted, it would include, as pointed out by the Library in its brief, all private business corporations doing business with the City. No such result could have been intended either by the drafters of the New York City Charter or the Act."

to exercise police powers." (*North Country Library System, supra,* p. 3175.)

Neither the Library nor its trustees are possessed of such powers, but merely provide a service, which although of public interest and benefit, is not the equivalent of the exercise of governmental powers.

We conclude that the city is neither the employer of Library personnel nor a joint employer with the Library for the purposes of the Taylor Act and further, that the Library is not a government or public employer within the meaning of the act, and therefore, PERB acted in excess of its jurisdiction.

Accordingly, the determination dated April 2, 1973, should be annulled on the law, without costs or disbursements, the petition granted and the unfair labor practice charge dismissed.

MARKEWICH, J. P., MURPHY, LUPIANO and LANE, JJ., concur.

Determination of the New York State Public Employment Relations Board, dated April 2, 1973, unanimously annulled, on the law, without costs and without disbursements, the petition granted and the unfair labor practice charge dismissed.

