■ MARY LANE, Appellant, v JAMES GREENIDGE, as Chairman of the New York City Council Against Poverty, et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to compel respondents to reinstate petitioner to her position as a secretary with the Crown Heights North Multi-Service Center, petitioner appeals, as limited by her brief, from so much of an order and judgment (one paper) of the Supreme Court, Kings County, dated June 28, 1976, as denied the application and granted the cross motion of respondents Greenidge and Lugo to dismiss the petition. Order and judgment affirmed insofar as appealed from, without costs or disbursements. In this CPLR article 78 proceeding, petitioner-appellant seeks to hold two New York City agencies vicariously and independently liable for the alleged wrongful conduct to her by a third party, a local community social services agency. Petitioner was employed as a secretary by the Crown Heights North Multi-Service Center (Crown Heights), a private unincorporated association, from April, 1974 until June, 1975, when she was terminated, allegedly without good cause and in violation of mandatory due process rights. Named as respondents in this proceeding, in addition to the parties directly involved with Crown Heights, are James Greenidge, Chairman of the New York City Council Against Poverty (CAP), and Peter Lugo, Commissioner of the Community Development Agency (CDA). Both municipal agencies are components of the New York City Human Resources Administration: CAP acts as the Board of Directors of CDA to oversee policy implementation; and CDA administers the various programs of community social services on a local level, with funds channeled, *inter alia,* under Federal legislation (see US Code, tit 42, § 2781 *et seq.).* To accomplish its goal, CDA contracts with numerous local and private social services organizations to provide the necessary funding, in return for the rendition of community services on a local level and the local social

services organization's agreement to abide by CDA's standards, scrutiny and administrative guidelines. CDA contracted with Crown Heights, a local social services organization, agreeing to provide basic adult education classes and a referral service to the Crown Heights community of Brooklyn. An examination of the CDA-Crown Heights contract reveals not only lengthy control and inspection provisions to insure Crown Heights' fiscal integrity and trustworthiness, but a provision which specifically disclaims CDA's liability for Crown Heights' acts with respect to personnel disputes. That provision states that "All personnel of [Crown Heights] shall be within the employ of [Crown Heights] only, which alone shall be responsible for their work, the direction thereof, and their compensation. Nothing in this agreement shall impose any liability or duty on [CDA] or the City for the acts, omissions, liabilities, or obligations of [Crown Heights]". The petition alleges, essentially, that by virtue of the fiscal control and compliance provisions of this contract, CDA exerted so much power and authority over the means of Crown Heights' performance of this contract that the disclaimer was void. Petitioner implies that CDA was actually an employer or principal of Crown Heights and the latter's employees and, hence, that CDA is vicariously liable for the obligations of Crown Heights and its wrongful conduct towards petitioner (see, e.g., *Matter of Morton,* 284 NY 167; *Matter of Beach v Velzy,* 238 NY 100). With respect to the municipal agencies, Special Term dismissed the petition for failure to state a cause of action against a public officer (see CPLR 7804, subd [f]). Inasmuch as the cross motion is addressed to the sufficiency of the petition, we will assume the truth of the material allegations thereof, i.e., that petitioner was wrongfully discharged (see *Kober v Kober,* 16 NY2d 191, 193; *Cohn v Lionel Corp.,* 21 NY2d 559, 562). We agree, however, with Special Term that the argument is not sound. While, undoubtedly, a municipal corporation is not immune from being deemed an "employer" of another party notwithstanding the agency defense that the said party is an "independent contractor" (see, e.g., *City of New York v Mason & Hanger Co.,* 293 NY 795, 796) and, likewise without doubt, the contract in dispute surrenders substantial fiscal and other controls to CDA, the petitioner fails to appreciate that what control is surrendered to CDA is unequivocally referrable only to guaranteeing the protection of the public and the public purse under a complicated State/Federal legislative scheme to dispense social services on a community level. Upon analysis, it becomes exceedingly clear that these control provisions surrendered to CDA by Crown Heights refer to mere *procedural* matters; the actual *substantive* work of this local organization, the day-to-day administration of the program, the planning and execution of the work, all of this was handled exclusively by Crown Heights and without substantial interference by CDA. This is clearly in accordance with Federal legislation that the programs be decentralized on local levels, and maximize "feasible participation or residents of the areas" (US Code, tit 42, § 2791, subd [f], par [1]). Accordingly, the municipal agencies involved here are not vicariously liable for the actions of Crown Heights (cf. *Matter of New York Public Lib. v New York State Public Employment Relations Bd.,* 45 AD2d 271, 277-278, affd 37 NY2d 752). Furthermore, there is no basis upon the record to find that these municipal agencies are independently liable for having contracted with an "incompetent contractor", or for failing to follow their own procedural due process guidelines in reviewing this matter. Damiani, J. P., Shapiro, Mollen and O'Connor, JJ., concur.