NEW YORK INSTITUTE FOR THE EDUCATION OF THE BLIND, Respondent, v UNITED FEDERATION OF TEACHERS' COMMITTEE FOR THE NEW YORK INSTITUTE FOR THE EDUCATION OF THE BLIND et al., Appellants.

First Department, December 8, 1981

APPEARANCES OF COUNSEL

*Elizabeth A. Truly* of counsel *(James R. Sandner,* attorney), for United Federation of Teachers' Committee for the

New York Institute for the Education of the Blind and another, appellants.

*Norbert M. Phillipps* for the New York State Labor Relations Board, appellant.

*Jonathan L. Sulds* of counsel *(Herman E. Cooper,* attorney), for respondent.

OPINION OF THE COURT

SULLIVAN, J.

This action arises out of the efforts of the United Federation of Teachers, Local 2, AFL-CIO (UFT) and its affiliate, the United Federation of Teachers' Committee for the New York Institute for the Education of the Blind, to obtain, pursuant to section 705 of the Labor Law, New York State Labor Relations Board (State Board) certification of the UFT as collective bargaining representative of certain employees of the New York Institute for the Education of the Blind (Institute).

In the course of the State Board's investigation of the UFT's representation petitions, the Institute raised a question as to whether the board had jurisdiction over it and its employees upon the ground, *inter alia,* that it was a "public employer" and its employees "public employees" within the meaning of article 14 of the Civil Service Law (Taylor Law), subdivisions 6 and 7 of section 201 respectively, and, therefore, that jurisdiction was properly vested in the New York State Public Employment Relations Board, pursuant to sections 200 to 214 of the Civil Service Law. Copies of a letter from the Institute's counsel to a UFT representative warning of the possible application of the Taylor Law, with its prohibition against strikes and the specter of fines and penalties for its violation, were distributed by the Institute to its employees. The UFT, alleging interference with the employees' exercise of their collective bargaining rights in violation of subdivision 10 of section 704 of the Labor Law, filed an unfair labor practice charge with the State Board. Eight days later, as the charge was being investigated, and three months after the filing of the original representation petition, the Institute commenced this action against the UFT, the committee and the State Board for a declaratory judgment, pursuant to CPLR 3001 and 3017 (subd [b]), that

it is a "public employer" and its employees "public employees" and, therefore, within the jurisdiction of the Public Employment Relations Board or, alternatively, if it is not a public employer, that it is subject to the jurisdiction of the National Labor Relations Board (National Labor Relations Act, US Code, tit 29, §§ 151-169), rather than the State Board. The statutorily mandated formal hearing (Labor Law, § 705, subd 3), which had been scheduled to ascertain the facts upon which this jurisdictional question would have been resolved, was aborted due to the commencement of this action.

After the State Board answered, the UFT and the committee moved to dismiss, asserting that the court lacked subject matter jurisdiction and that, in any event, in the exercise of judicial discretion, it should decline to entertain jurisdiction. The State Board joined in this application and submitted a supporting affirmation. In opposing the motion the Institute requested a declaration that it is a public employer. Special Term denied the motion and declared the Institute to be a public employer and its employees public employees under the Taylor Law.[1] Special Term stated, erroneously we believe, that "the material facts are not in dispute." As a matter of fact, the board, without any knowledge of the Institute's operations and its relationship to its employees, and having been deprived of the opportunity to conduct a hearing on the underlying jurisdictional question, by its answer put in issue all the material allegations of the complaint. Because we believe that the sound exercise of discretion and orderly administration of the labor laws and policies of this State require that the State Board be permitted, in the first instance, to conduct an evidentiary hearing and rule with respect to its own jurisdiction, we would reverse and dismiss the complaint.

The Institute, established in 1831 by special act of the New York State Legislature "for the purpose of instructing children who have been born blind, or who may have

---

1. Although the Institute had also sought, in the alternative, a declaration that it is subject to the National Labor Relations Act, Special Term did not pass upon that issue. Inasmuch as the Institute has not cross-appealed the issue is not before us.

become blind by disease or accident" (L 1831, ch 214),[2] is a residential educational facility for blind and blind multiple-handicapped children located in The Bronx. Examination of the statute creating it reveals that the Institute was incorporated solely as a private corporation,[3] not as a "public corporation". It is a "body corporate and politic, in fact and in name."[4] The Institute may purchase, hold and convey real and personal property in its own name and in furtherance of its purposes.[5]

Under the New York State Constitution, the State is required to maintain and support "a system of free common schools, wherein all the children of this state may be educated" (art XI, § 1). The State of New York has historically provided educational services to the blind, the deaf, and the handicapped through a combination of State-owned and private State-supported institutions (Education Law, §§ 4201 et seq., 4301 et seq., 4351 et seq., 4401 et seq.), whose purposes are identical. The Commissioner of Education exercises general regulatory authority over both types of schools. (See Education Law, § 4201 et seq.) Article 85 of the Education Law calls for the appointment of "[a]ll blind persons of suitable age and capacity *** who shall have been residents in this state for one year" as "state pupils" to either the Institute, the New York State School for the Blind in the City of Batavia or the Lavelle School for the Blind in the City of New York. (Education Law, § 4206, subd 1.) Appointments of blind children to each of these institutions are made on the basis of residence. Traditionally, the Institute and the Lavelle School receive children who reside in the lower tier of the State, south of Albany, while the State school in Batavia takes those from the northern tier. The Batavia school currently has approximately 100 students and the Lavelle School approximately

---

2. Its charter, initially designated to expire on May 1, 1852, was extended indefinitely by chapter 333 of the Laws of 1852.

3. In 1831 all corporations, business, nonprofit or otherwise, were formed by special acts of the Legislature. The first provision for a general incorporation law was made in section 1 of article VIII of the Constitution of 1846. (See *Johnson v Hudson Riv. R.R. Co.*, 49 NY 455, 458.) Under present-day statutes the Institute would be incorporated under subdivision (b) of section 201 of the Not-For-Profit Corporation Law [Type B], and section 216-a of the Education Law.

4. L 1831, ch 214, § 1.

5. *Ibid.*

70. The State school in Batavia, established by the Legislature in 1867 (L 1867, ch 744), is a State-operated facility (Education Law, § 4301) while the Institute and the Lavelle School are State-supported private schools[6] "subject to the visitation of the commissioner of education" (Education Law, § 4201, subd 1).

Subdivision 2 of section 4201 of the Education Law, which fixes the specific duties and responsibilities of the Commissioner of Education, *inter alia,* authorizes the commissioner to inquire into the organization and methods of instruction employed by the schools; to prescribe courses of study and methods of instruction that meet State requirements; to appoint, transfer and cancel appointments of students; to suggest to the school and the Legislature such improvements as he deems expedient and to report annually to the Legislature regarding his observations. Private State-supported schools may, with the exception of those recommendations related to accreditation and appointment of pupils, accept or reject the commissioner's recommendations.

At present, there are two State-owned and 10 private State-supported institutions for the education of the blind and the deaf subject to the visitation of the commissioner.[7] The Institute is one of the 10 private State-supported institutions. In 1979, it employed approximately 280 persons and serviced approximately 159 blind and blind multiple-handicapped students in day and residential treatment programs. The Institute is funded through Federal, State and private sources. Most of its students are State-appointed (see Education Law, § 4206), for each of whom the director of the Institute receives an appropriation from the Commissioner of Taxation and Finance for tuition and maintenance (see Education Law, § 4207). A small number of out-of-State students, whose tuition is paid directly to the Institute, usually by the State of which they are

6. The terminology "private State-supported schools" appears in section 200.6 of the commissioner's regulations (8 NYCRR 200.6).

7. In addition to the New York State School for the Blind in the City of Batavia, the other State-owned and operated institution for the education of the blind and deaf subject to the visitation of the commissioner is the New York State School for the Deaf in the City of Rome.

residents, are accepted into the Institute's program. In addition, the Institute receives Federal grants and solicits private donations.

The State reimburses the Institute for a substantial part of its operating expenses. (See former subdivision [b] of section 200.6 of the commissioner's regulations [84 NYCRR 200.6 (b)].) To qualify for such reimbursement, the Institute is required to justify its proposed and actual expenses to the commissioner. The expenditures at State-owned and operated schools furnish the guidelines for the budget review of private State-supported schools, like the Institute. (See former section 200.6 [subd (b), pars (1)-(4)] of the commissioner's regulations. [8 NYCRR 200.6 (b) (1)-(4)].) Neither the State nor the commissioner imposes any limitation on the use by State-supported schools of private funds which are available to supplement employee wages and benefits. By regulation, the commissioner has even suggested that private State-supported schools for the blind and deaf designate part of their private funds to provide "merit supplements" to the salaries of members of the staff. (See former section 200.6 [subd (b), par (8)] of the commissioner's regulations [8 NYCRR 200.6 (b) (8)].)

A self-perpetuating and self-governing board of managers, none of whom is either a State officer[8] or school district officer,[9] manages the Institute and is responsible for the conduct of its affairs.[10] These managers neither hold office at the pleasure of, nor derive their authority from, any public official or body.[11] The Institute's officers are elected by the board of managers from among its own number.

Employment at the Institute is not governed by civil service appointment procedures, and employees are in neither the classified nor the unclassified division of civil service. Nor do its pedagogical personnel enjoy the protection of tenure under the Education Law. (See Education Law, § 3012 et seq.)

The two State-owned and operated schools for the education of the blind and the deaf subject to the visitation of the

8. See Public Officers Law, § 2.
9. See Education Law, § 2101 et seq.
10. L 1831, ch 214, § 2.
11. Ibid.

Commissioner of Education pursuant to section 4201 of the Education Law, the State school in Batavia and the New York State School for the Deaf in the City of Rome, are "under the jurisdiction and control of the education department." (Education Law, §§ 4301, 4351.) Each has an advisory board of visitors, the members of which are appointed by the Governor. (See Education Law, §§ 4301 *et seq.,* 4351 *et seq.)* Responsibility for the day-to-day operation of the State schools is vested in a superintendent (see Education Law, §§ 4307, 4354) appointed by the Board of Regents, upon the recommendation of the Board of Visitors and with the approval of the Commissioner of Education, and who is under the jurisdiction and control of the Education Department.

Employees of the State School for the Blind in Batavia and the State School for the Deaf in Rome are civil service employees. (Education Law, § 4307, subd 2; § 4354, subd 3; Civil Service Law, § 35, subd [k].) The Commissioner of Education is responsible for classifying professional positions which require the performance of educational functions at the State schools and certifying such positions to the Civil Service Commissioner. Professional positions at the State schools are in the unclassified service, and all other positions, with the exception of those specifically exempted from operation of the civil service laws, are in the classified service. (See Civil Service Law, § 35, subd [k]; §.40.) The Commissioner of Education is responsible for establishing State school personnel procedures and conditions of employment, including the formulation of a salary plan and the promulgation of regulations for appointment, promotion, probation, permanent tenure, disciplinary action and attendance. (See Education Law, § 4307, subd 2; § 4354, subd 3.) Any bequest or donation to the State school in Batavia, unlike those to the Institute, must be received in the name of the State, which has the right to the control of such bequest or donation. (Education Law, § 4318.)

At the outset we are confronted with an issue which was not part of the record at Special Term. Subsequent to the commencement of this action the Institute filed a petition with the National Labor Relations Board (National Board)

for an advisory opinion in conformity with sections 102.98 and 102.99 of the NLRB Rules and Regulations, Series 8, as amended (29 CFR 102.98, 102.99) that, if it were not a public employer, the National Board, and not the State Board, would have jurisdiction over it. Hearings were held and after Special Term's determination, the National Board, finding that the Institute "is an agent of * * * and * * * 'administrative arm' of the State", rendered a decision declining to assert jurisdiction under subdivision (2) of section 2 of the National Labor Relations Act (US Code, tit 29, § 152, subd [2]).[12]

Thus, the Institute contends, the National Board issued a binding determination, which defendants are collaterally estopped from challenging, that the Institute is a public employer within the meaning of the Taylor Law. The National Board, however, expressly disclaimed any intention of speaking with respect to, or deciding, the issue now before us, when, in a footnote to its decision, it stated: "We need not reach, however, and do not indicate any view as to the state court's holding, or whether the Institute would be subject to jurisdiction of the New York State Labor Relations Board under New York State's 'Taylor' law."

Generally, for a former adjudication[13] to be binding in subsequent litigation "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action". (*Schwartz v Public Administrator of County of Bronx*, 24 NY2d 65, 71;[14] see, generally, Rosenberg, Collateral Estoppel in New York, 44 St. John's L Rev 165.) As the National Board itself noted, the issue of whether the Institute was subject to the jurisdiction of the State Board was never actually litigated in the proceeding before it. The only question actually litigated and determined by the National Board was whether the Institute "meets the definition of 'employer' in Section

12. This section, *inter alia*, provides: "The term 'employer' * * * shall not include * * * any State or political subdivision thereof".

13. The National Board decision is not a former adjudication in the sense contemplated by collateral estoppel principles. Special Term's decision, which is the subject of this appeal, was rendered one year before the National Board's determination.

14. In addition, there must also have been a full and fair opportunity to contest the decision now said to be controlling. It should be noted that the State Board was not a party to the National Board proceeding and is thus not bound by the determination there. (*Matter of New York State Labor Relations Bd. v Holland Laundry*, 294 NY 480.)

2(2) of the [National] Act." Nor may it be argued that a State law determination was essential to the Federal jurisdictional question since "[f]ederal, rather than state, law governs the determination, under § 2(2) [of the national act], whether an entity created under state law is a 'political subdivision' of the State and therefore not an 'employer' subject to the Act." *(NLRB v Natural Gas Utility Dist., 402 US 600, 602-603.)*

In this connection it should be noted that a different standard is applied under the national act in determining public employer status. Under the National Labor Relations Act it is the "political subdivision" which is exempt from the act's provisions (US Code, tit 29, § 152, subd [2]). The Supreme Court has noted that the National Board "'has limited the exemption for political subdivisions to entities that are either (1) created directly by the State, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" *(NLRB v Natural Gas Utility Dist., 402 US, at p 604-605.)* In contrast, the Taylor Law defines a public employer as: "(i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission, or public benefit corporation, or (vi) any other public corporation, agency or instrumentality or unit of government which exercises governmental powers under the laws of the state." (Civil Service Law, § 201, subd 6, par [a].) Clearly, the Taylor Law definition of "public employer" is more specific than the National Board's standard for exemption as a political subdivision under the National Labor Relations Act. Thus, the issue of political subdivision status under subdivision (2) of section 2 of the National Labor Relations Act is not identical to the issue of public employer status under the Taylor Law.

Moreover, political as well as constitutional considerations would seem to dictate Federal administrative deference to the States in so sensitive an area as the meaning of

a State statute dealing with public employer status. In any event, it is well settled that different administrative agencies may reach different conclusions on the same or similar facts for the purposes of their own statutes. (See, e.g., *Matter of Croshier v Levitt,* 5 NY2d 259, 266; *Matter of Owens v McGovern,* 309 NY 449, 457-458; *Matter of Daly v State Comptroller,* 2 AD2d 139, 143; *National Labor Relations Bd. v Western Meat Packers,* 368 F2d 65, 70; *National Labor Relations Bd. v Stafford Trucking,* 371 F2d 244, 249; *Overnite Transp. Co. v National Labor Relations Bd.,* 372 F2d 765, 769.)

Nor is an issue of Federal pre-emption presented. Indeed, in reaching the determination that it does not have jurisdiction because the Institute is not an employer subject to the National Labor Relations Act, the National Board specifically stated that it was not expressing any opinion with respect to whether the Institute would be subject to the jurisdiction of the State Board under New York law, a tacit admission that Federal law does not displace State law on the issue. (See *Bethlehem Co. v State Bd.,* 330 US 767, 771-773; *Guss v Utah Labor Bd.,* 353 US 1, 6, 9; cf. National Labor Relations Act, § 14, subd [c], par [2] [US Code, tit 29, § 164, subd (c), par (2)].)

Special Term's conclusion that the Institute is a public employer was based on findings that it assists the State in fulfilling a constitutional mandate, and that the Commissioner of Education exercises authority, *inter alia,* with respect to the appointment of pupils, length of program, courses of instruction and funding. These findings, notwithstanding their surface appeal, are not dispositive of the issue of whether the Institute is a public employer since other factors, not addressed by Special Term, either nullify their significance or dictate a different result.

As already noted, a public employer is defined in part as "any *** agency or instrumentality *** which exercises governmental powers under the laws of the state." (Civil Service Law, § 201, subd 6, par [a], cl [vi].) This definition requires that the "agency or instrumentality" must, itself, be one "of government", as this court has held in *Matter of New York Public Lib. v New York State Public Employment Relations Bd.* (45 AD2d 271, 283, affd 37

NY2d 752). The institute is a private nonprofit corporation governed and under the exclusive management and control of a self-perpetuating board of managers, none of whom holds office by virtue of public appointment or election to public office. These factors, alone, might be sufficient to place it outside the scope of the Public Employees' Fair Employment Act (Civil Service Law, art 14). In *New York Public Lib. (supra)* this court found that the library is a "private, separate legal entity" (p 283) which discharges its daily obligations "through its self-perpetuating Board of Trustees" (p 278).

The existence of a constitutional mandate does not compel the conclusion that all private State-supported educational institutions like the Institute are "instrumentalities" of the State and public employers under the Taylor Law. (Cf. *New York State Assn. for Retarded Children v Carey*, 456 F Supp 85.) While education may be a responsibility of the State, it is also provided by private schools and other eleemosynary institutions either at no cost, or at less than actual cost, to the pupils. These institutions are not thereby converted into a governmental instrumentality or public employer. Unless carefully defined, the concept of "instrumentality * * * which · exercises governmental powers" (Civil Service Law, § 201, subd 6, par [a]) could be expanded to include virtually every contractual supplier of services to State or local governments.

In *Matter of North Country Lib. System* (1 PERB 3173) the Public Employment Relations Board, in discussing the phrase "instrumentality or unit of government which exercises governmental powers," stated (p 3175): "Such powers are those which may be exercised *only* by the state (in contradistinction to proprietary powers, which are exercisable by individuals or the state) or by a lesser governmental body to which such powers have been delegated by the state. By way of example, they would include the power to tax, to enact general legislation which is judicially enforceable, to take by eminent domain, and to exercise police powers."[15]

15. In *Matter of Queens Borough Public Lib.* (13 PERB 3091) the Public Employment Relations Board expanded its concept of an instrumentality exercising governmental powers to include individuals who derive their authority from appointment by a public official. Were such an interpretation to be accepted, a serious question would exist as to whether the Institute is a public employer, even under this expanded concept, since no

In *Matter of New York Public Lib. v New York State Public Employment Relations Bd.* (45 AD2d 271, 284, *supra*), this court cited *North Country (supra)* with approval and concluded: "Neither the Library nor its trustees are possessed of such powers, but merely provide a service, which although of public interest and benefit, is not the equivalent of the exercise of governmental powers."

The term "public employee" is defined in subdivision 7 of section 201 of the Civil Service Law as "any person holding a position by appointment or employment in the service of a public employer". As this court noted in *New York Public Lib.*[16] (45 AD2d, at p 281), "an important consideration in determining whether one is an employee within the meaning of the Taylor Act, is whether he has civil service status." (See, also, *White v Boland,* 254 App Div 356.) In affirming this court's determination in *New York Public Lib.* (37 NY2d 752, 753, *supra*) the Court of Appeals noted that "the Taylor Law applies only to employment which is unequivocally or substantially public."

The Institute argues that it does not control its own labor relations, but, rather, that the State is the dominant, controlling influence in that "the New York State Department of Education fixes the number of employees whom [t]he Institute may hire, and the pay and other benefits they may receive." It contends that, because it cannot expend sums in excess of the amounts approved for reimbursement by the Commissioner of Education, salaries are paid "according to Civil Service classification established and administered by the New York State Department of Education" and new positions approved "by the State in its budgetary review." The Institute argues that it is so circumscribed in exercising its authority by the requirements of the Commissioner of Education that, in practical terms, it is without effective control. Of course, it should be noted that the Institute is not statutorily obliged to adopt a classification system and wage scale similar to that of the

---

member of its board of managers holds office by appointment from a public official. *Matter of Queens Borough Public Lib.* is now before the Appellate Division, Second Department, on transfer from the Supreme Court.

16. Unlike *New York Public Library* which involved a similar issue, there was no "lengthy hearing" held here. Nor were there "comprehensive findings" made by an administrative agency charged with statutory responsibility for developing a complete record and making an initial determination with respect to its own jurisdiction.

State. It does so for its own administrative convenience as an aid in funding.

On the other hand, the union and the committee point out that the Institute's decisions with respect to hiring and discharge of employees, as well as promotion and discipline, are within the exclusive authority of its board of managers, and that while the Institute uses the civil service pay scale in establishing wages for certain of its employees it is "free to supplement the monies received from public sources with private funds."

It is obvious that the jurisdictional issue of whether the Institute is a public employer cannot be determined from the face of the statutes. Special Term's determination that it is a public employer was based almost exclusively on the Institute's own account of its operations. Thus, this record, which is demonstrably unclear with respect to the issue of control of labor relations at the Institute and, more particularly, with respect to whether Institute employees are civil service employees, contains none of the contravening factors which might point to a different conclusion. The UFT and the committee were never afforded the opportunity to examine the Institute's director or anyone else familiar with its day-to-day operations, personnel policies or financial affairs. The quantum and availability of the Institute's private resources would seem to be a relevant area of inquiry. All of these and other relevant matters should be developed at an evidentiary hearing before a conclusion on the State Board's jurisdiction is reached.

By its nature a declaratory judgment is a judgment on the merits. As the Court of Appeals has observed "[u]ntil disputed 'questions of fact necessary to be determined before judgment can be rendered' are settled, it is plain that rights and legal relations cannot be determined, defined and declared." *(Rockland Light & Power Co. v City of New York,* 289 NY 45, 50.) Of course, while the presence of factual issues does not, *ipso facto,* preclude maintenance of the action, where, as here, complicated factual issues are involved which could be expeditiously resolved in an administrative proceeding before an agency with expertise in

a specialized area, courts should, in the exercise of sound discretion, relegate the parties to their statutory remedies.

The State Board is, as already noted, specifically authorized to conduct a formal hearing by subdivision 3 of section 705 and subdivisions 2 and 3 of section 706 of the Labor Law, and has the power to determine in the first instance questions of fact, including those upon which its jurisdiction depends. Even the possibility that an agency or tribunal of limited jurisdiction may ultimately be without jurisdiction does not deprive it of the power to hold hearings to obtain the evidence upon which the presence or absence of such jurisdiction depends. It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted", a rule which has application even "where, as here, the contention is made that the administrative body lacked power over the subject matter." *(Myers v Bethlehem Corp.,* 303 US 41, 50-51; see, also, *Matter of Allen v Kelley,* 191 Misc 762, 766, affd 273 App Div 963, app dsmd 302 NY 601.)

If, after such a hearing, the State Board should find that the Institute is a public employer and therefore not subject to its jurisdiction it will dismiss the proceedings. (See, e.g., *City of New York,* 1 NYSLRB 219; *Consolidated Guard Serv.,* 39 NYSLRB No. 24; *Broome County Veterans,* 39 NYSLRB No. 44; *Binghamton Housing Auth.,* 40 NYSLRB No. 18; *Bayside & Hills Assoc.,* 40 NYSLRB No. 22; *Master Coachmen,* 40 NYSLRB No. 66; *Baumann & Sons Buses,* 42 NYSLRB No. 10; *Globe Protection,* 42 NYSLRB No. 19.) If, on the other hand, the State Board finds that it has jurisdiction, its order is not self-enforcing. The Institute has a remedy because final orders of the State Board are subject to judicial review as specifically provided by subdivisions 1 and 4 of section 707 of the Labor Law. Such review provides an adequate remedy. *(Metropolitan Life Ins. Co. v New York State Labor Relations Bd.,* 280 NY 194, 207; *Labor Bd. v Jones & Laughlin,* 301 US 1, 47.) In the exercise of its discretion, a court should not grant declaratory relief when a plaintiff has an adequate remedy at law through other administrative and judicial proceedings.

(See *James v Alderton Dock Yards,* 256 NY 298, 305; *Newburger v Lubell,* 257 NY 383, 386.)

Accordingly, the judgment, Supreme Court, New York County (TYLER, J.), entered February 13, 1980, which denied defendants' motions to dismiss the complaint, declared that plaintiff is a public employer and its employees public employees, and declared that the New York State Labor Relations Board lacks jurisdiction over the Institute and its employees, should be reversed, on the law and in the exercise of discretion, without costs or disbursements, and the complaint dismissed.

MURPHY, P.J., CARRO and LUPIANO, JJ., concur with SULLIVAN, J.; KUPFERMAN, J., dissents and would affirm.

Judgment, Supreme Court, New York County, entered on February 13, 1980, reversed, without costs and without disbursements, and the complaint dismissed.