In the Matter of the Application of THE BROOKLYN PUBLIC LIBRARY, Respondent, for a Peremptory Writ of Mandamus Directed to CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant.

Second Department, May 26, 1922.

Municipal corporations — city of New York — mandamus to compel comptroller to audit and approve payroll of employees of Brooklyn Public Library as submitted by board of directors — appropriation by city is one in gross disbursable in accordance with judgment of library board of directors — board of directors not limited by particular items in appropriation — board may fix salaries — peremptory mandamus order properly granted.

Under the contract made between the Brooklyn Public Library and the city of New York, which provides in part that it is " agreed and understood   *   *   * that the entire amount of the annual appropriation   *   *   * shall be disbursed and paid from time to time by the comptroller upon submission to him of proper vouchers, in form to be approved by him   *   *   *," the appropriation made by the board of estimate and apportionment, though it specifies the particular positions and the amount of salaries to be paid to the incumbents, is one in gross disbursable in accordance with the judgment of the library board of directors within the total amount of the appropriation, and the board of directors are not limited by particular items in the appropriation.

Under the various statutes delegating powers to the libraries, and the contract made with the city of New York, the board of trustees of the library is the body charged with the duty of distributing the fund appropriated by the board of estimate and apportionment, and the board of trustees have discretionary powers so long as they are exercised in good faith, to fix the salaries of the employees and carry out generally administrative duties.

Accordingly, a peremptory mandamus order was properly granted, directing the comptroller of the city of New York to audit and approve the payroll of employees of the Brooklyn Public Library for the month of January, 1921, in the form and amount submitted to him, and to prepare the necessary warrant for the amount thereof and to do all the acts necessary to pay to the petitioner the said sum out of the money appropriated.

APPEAL by Charles L. Craig, as comptroller of the city of New York, from a peremptory mandamus order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 29th day of December, 1921, requiring the appellant forthwith to audit and approve the payroll of the employees of the Brooklyn Public Library for the month of January, 1921, in the form and amount theretofore submitted to him, showing the moneys needed to pay the administrative expenses of said library for said month and to prepare the necessary warrant for the amount thereof.

*Charles J. Druhan* [*John P. O'Brien, Corporation Counsel,* with him on the brief], for the appellant.

*Meier Steinbrink* [*Frank E. Johnson* with him on the brief], for the respondent.

Order affirmed, with ten dollars costs and disbursements, upon the opinion of Mr. Justice KELBY at Special Term.

BLACKMAR, P. J., RICH, KELLY, JAYCOX and YOUNG, JJ., concur.

The following is the opinion delivered at Special Term:

KELBY, J.:

Application for a peremptory mandamus order directing the comptroller of the city of New York forthwith to audit and approve the payroll of the employees of the Brooklyn Public Library for the month of January, 1921, in the form and amount heretofore submitted to him; showing the moneys needed to pay the administrative expenses of said library for said month, and to prepare the necessary warrant for the amount thereof, and to do all other acts necessary to pay to the petitioner the said sum out of the moneys appropriated for its maintenance for the year 1921 by the board of estimate and apportionment. The question presented is the concrete test of a controversy between the comptroller and the library board of directors as to whether the annual appropriation for the year 1921 is disbursable only in equal monthly divisions of the various items which entered into its fixation or whether it is an appropriation in gross, disbursable in accordance with the judgment of the library board of directors. Entire good faith in a fair difference of opinion on a question of law is on both sides assumed and admitted. The library is not a branch of the city government, but is a distinct and separate corporation, receiving budgetary contribution from the city, like other educational agencies, such as the various museums of art and of natural history and the College of the City of New York. (See *People ex rel. College of City of New York* v. *Hylan*, 116 Misc. Rep. 334.) Without detailing the process of its evolution, the relator is the successor of the old Brooklyn Library, which was a private corporation owning an effective subscription library, and also of the Brooklyn Public Library, which was a more or less inchoate public project for a free public library system. These were consolidated into the present Brooklyn Public Library for the purpose of participating in the benefits of the offer of Andrew Carnegie to give $5,200,000 for the erection of free public library buildings provided the city would supply the sites and agree to furnish the maintenance. To that end the city and the library entered into a formal contract in June, 1903. Regarding for brevity the contract as including various auxiliary and enabling statutes, the city recognized and accepted the separate

corporate identity and existence of the Brooklyn Public Library, and envisaged the survival or devolution into it of the powers of self-control possessed by the merged organizations, including the right to appoint the library staff and to fix the compensation thereof. The city agreed to appropriate in its annual budget such sums as might be requisite for the maintenance and administration of the library with the single expressed restriction that no salaries or compensation were to be paid to the board of directors or others than the direct library personnel. The particular part of the contract in question in this proceeding provides that it was " agreed and understood * * * that the *entire* amount of the *annual* appropriation * * * shall be disbursed and paid *from time to time* by the comptroller upon submission to him of proper vouchers, *in form to be approved by him * * *.*" The italics are added to accentuate the textual bases of the opposing contentions. The comptroller's contention requires a holding that there was intended an equal monthly division or allocation of the amount of the appropriation, importing and requiring a corresponding incidence in disbursement. This is not supported by the terms used in the contract, but is opposed thereby. No such prescription appears in the phrase that the *entire* amount of the *annual* appropriation shall be disbursed from *time to time*, with the *form* only of the vouchers to be subject to the comptroller's approval. The comptroller invokes what he terms " a fundamental principle of audit," whereby, as it is argued, no municipal appropriation is to be considered as an appropriation in gross or by entirety, but as an appropriation limited by the *items* stated in the estimate furnished to the board of estimate and apportionment and revised in the budget-making process. To establish this principle of audit reference is made to the mandate of the State Constitution (Art. 3, § 21) that all laws making appropriations shall specify sum and object, and it is also said that the State legislative appropriation laws always speak by item and express no totals. This may be by prudent practice rather than by fundamental principle, but, assuming that there is in State finance this principle of audit, it is noticeable that the city's practice differs from the State's, for in the city budget all appropriations, including that to the library, do express totals. This appears to follow the sections of the charter dealing with the budget-making process. Thus section 226 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1917, chap. 258) speaks of that process as embracing consideration of " the aggregate sum and the items thereof allowed to each department," but its concluding words state as the final end and effect of that process that " the said several sums shall be and become appropriated." Other portions of

the same section also indicate that the measure inheres not in the items, but in the total.   Thus the section directs that annually, " in order to enable said board to make such budget," each department head shall furnish " an estimate   *   *   *   called a departmental estimate, of the amount of expenditure, specifying in detail the objects thereof,   *   *   *   including a statement of each of the salaries of their officers, clerks, employees and subordinates."   This statement of details, or items of salaries, is thus explicitly informative in character.   It is necessarily subjected to constant tentative revision, by addition and subtraction, in the reconciliation of the many pressing needs, which is the purpose of all budget building. Section 149 of the charter (as amd. by Laws of 1917, chap. 401) contains the direction that the comptroller shall furnish to the head of each department monthly a statement of the unexpended balances of his appropriation.   This direction surely does not imply the hypothesis of an annual appropriation which automatically divides itself into equal monthly payments in accord with the final form of the revised items entering into the budget.   Section 1542 of the charter plainly looks to yearly limitation and furnishes the rule of audit, which is not, as to the library, limited by whatever may be the usual or uniform practice between the city and its various departments for convenience and control.   The board of estimate having made its annual appropriation, that sum cannot be questioned, in the absence of bad faith, as being adequate provision for the year 1921, but it seems clear that under the various statutes delegating powers to various libraries and the contract made with the city of New York that the board of trustees of the library is the body charged with the duty of  distributing the fund already appropriated by the board of estimate.   The board of trustees was intended, both by the statutes and the contract, to have discretionary powers so long as they were exercised in good faith to fix the various salaries of its employees and carry out generally its administrative duties.   The case of *Matter of Flaherty* v. *Craig* (226 N. Y. 76) does not conflict with this holding.   In the *Flaherty* case the budget had already been made up.   The sum asked for was an increase and not an already existing salary provided for in the budget. The projected increase in the salary had not been one of the items submitted to the budget-making power which would be needed for the next financial year.   In the case at bar all the facts to guide the budget-making power were present before the appropriation of a gross sum, and there was no complaint made that the library has not fully complied with all the procedural requirements mentioned in the *Flaherty* case.   For the foregoing reasons the motion is granted, with ten dollars costs.