In the Matter of an Application by
ALAMEDA ROOM, INC.,
Petitioner,

v.

Vito J. PITTA, as President of the New
York Hotel and Motel Trades Council,
AFL–CIO, Respondent.

No. 81 Civ. 7710 (RJW).

United States District Court,
S. D. New York.

May 13, 1982.

Rubin Feldman, New York City, for petitioner.

Rochelle L. Roth, New York City, for respondent.

**ROBERT J. WARD, District Judge.**

This action was commenced in the Supreme Court of the State of New York, New York County, by service of the petition on November 10, 1981. It was removed to this Court by a petition for removal filed by respondent on December 10, 1981. Petitioner now moves, pursuant to 28 U.S.C. § 1447(c), for an order remanding this action to state court on the ground that it was improvidently removed to this Court. Respondent opposes this motion, and also moves, pursuant to Rule 56, Fed.R.Civ.P., for an order granting summary judgment in his favor. For the reasons hereinafter stated, both motions are denied.

*Background*

Petitioner is Alameda Room, Inc. ("Alameda"), a New York corporation that owns and operates a restaurant, known as the Chateau Madrid, in space leased by Alameda from the Lexington Hotel, a hotel located in Manhattan at Lexington Avenue and East 48th Street. Respondent is Vito J. Pitta, President of the New York Hotel and Motel Trades Council ("the Trades Council"). Alameda's petition, which was filed pursuant to N.Y.Civ.Prac.Law § 7503(b), seeks an order either (1) staying an arbitration proceeding demanded by the Trades Council or (2) disqualifying a particular member of the three-person arbitral commission that has been constituted pursuant to the Trades Council's arbitration demand. The Trades Council is a labor organization that acts as the exclusive collective bargaining representative for a number of workers in the hotel and restaurant industry, including Alameda's kitchen and dining room employees at the Chateau Madrid. Alameda and the Trades Council are both signatories to an industry-wide collective bargaining agreement ("the Agreement"), which is due to expire on May 31, 1982.

In late 1980, the Trades Council and Alameda became engaged in negotiations regarding the Trades Council's contention that Alameda's kitchen and dining room employees at the Chateau Madrid were, under the Agreement, entitled to a cost-of-living adjustment effective January 1, 1981. On March 6, 1981, after negotiations concerning this matter had broken down, the Trades Council formally demanded, pursuant to the Agreement, that the cost-of-living adjustment issue be arbitrated. Under the Agreement, arbitrations of cost-of-living adjustment issues are heard by a single arbitrator, who is referred to in the Agreement as the "Impartial Chairman."

The Impartial Chairman scheduled the arbitration hearing for June 10, 1981. By a letter dated June 5, 1981, Alameda purported to withdraw from the Agreement. Shortly thereafter, on June 9, 1981, Alameda filed a petition, pursuant to N.Y.Civ. Prac.Law § 7503(b), in the Supreme Court of the State of New York, New York County, seeking an order either staying the arbitration proceeding demanded by the Trades Council or disqualifying, on the ground of bias, the Impartial Chairman from acting as the arbitrator. In its petition, Alameda argued that, in light of its June 5 renunciation of the Agreement, it was not subject to a binding arbitration provision with respect to the cost-of-living adjustment sought by the Trades Council.

The state court granted Alameda's application for a temporary stay of the arbitration pending adjudication of Alameda's petition. Pitta, who was named as the respondent in Alameda's petition, did not seek to remove the action to federal court. Instead, he applied to the state court for a summary dismissal of Alameda's petition. By an opinion dated July 27, 1981, and a subsequent order filed on September 23, 1981, the state court denied Pitta's application and ordered that the action be prepared for a trial on the merits. Discovery in the action has now been completed, and the action is about to be placed on the state court's trial calendar. The state court's temporary stay of the arbitration remains in effect.

During September 1981, Alameda and the Trades Council became involved in another dispute. This dispute concerned the Trades Council's contention that Alameda's kitchen and dining room employees at the Chateau Madrid were, under the Agreement, entitled to a wage-rate adjustment effective June 1, 1981.* On October 14, 1981, after negotiations between the Trades Council and Alameda regarding this matter had broken down in similar fashion to the earlier negotiations over the cost-of-living adjustment issue, the Trades Council formally demanded, pursuant to the Agreement, that the wage-rate adjustment issue be arbitrated. Under the Agreement, arbitrations of wage-rate adjustment issues are heard by a three-person arbitral commission composed of the Impartial Chairman and representatives of the two parties.

Upon receiving the Trades Council's second arbitration demand, the Impartial Chairman informed the parties that he would not proceed with the second arbitration until Alameda's petition to stay the first arbitration had been adjudicated. Notwithstanding this decision, Alameda responded to the Trades Council's second arbitration demand by filing a second petition in state court. In similar fashion to its

earlier petition, Alameda's second petition sought an order either staying the second arbitration proceeding demanded by the Trades Council or disqualifying for bias the Impartial Chairman as a member of the three-person arbitral commission. In its new petition, Alameda once again argued that, in light of its June 5 renunciation of the Agreement, it was not subject to a binding arbitration provision with respect to the issue raised by the Trades Council. Pitta responded to Alameda's second petition by filing a petition for removal, thereby bringing Alameda's second petition before this Court and triggering the motions that are the subjects of today's opinion.

In short, the Trades Council has demanded two separate arbitrations, the first of which would concern whether the kitchen and dining room employees at the Chateau Madrid are entitled to a cost-of-living adjustment effective January 1, 1981, and the second of which would concern whether these employees are entitled to a wage-rate adjustment effective June 1, 1981. Alameda has filed separate petitions in state court seeking to stay each arbitration. The first arbitration has been temporarily stayed by the state court, and the second arbitration has been voluntarily stayed by the Impartial Chairman. Alameda's first petition is approaching trial before the state court, having been the subject of an unsuccessful summary dismissal application and all necessary discovery proceedings. The second petition is before this Court, having been removed from the state court by respondent Pitta. Each petition raises the following question: Did Alameda's purported withdrawal from the Agreement have the effect of relieving Alameda from the arbitration provisions contained in the Agreement, including any obligation to arbitrate the effectiveness of Alameda's purported withdrawal from the Agreement?

*Discussion*

With the foregoing background in mind, the Court turns to a discussion of the two

---

\* The wage-rate adjustment sought by the Trades Council would alter the basic wages paid to Alameda's kitchen and dining room employees. The wage-rate adjustment issue is thus analyti-

cally distinct from the cost-of-living adjustment issue that is the subject of the first arbitration demanded by the Trades Council.

pending motions. The Court deals first with Alameda's motion for an order remanding this action to state court, and then discusses respondent Pitta's motion for summary judgment.

## I

Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs." The right of the defendant in a state court civil action to remove the action to federal court is governed by 28 U.S.C. § 1441(a), which provides as follows: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Alameda contends that the instant action is not one over which the federal district courts have original subject matter jurisdiction, and consequently moves for an order remanding this case to state court. Pitta argues, on the other hand, that this action is one "arising under [an] Act of Congress regulating commerce" within the meaning of 28 U.S.C. § 1337, and thus is removable as an action "founded on a claim or right arising under the ... laws of the United States" within the meaning of 28 U.S.C. § 1441(b). In support of this argument, Pitta contends that Alameda's action should be deemed to "aris[e] under" federal law because, although Alameda's petition is pleaded solely in terms of state law, it alleges facts that state a claim under section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). Alameda opposes Pitta's position by arguing, that, since its petition nowhere mentions federal law, its action cannot possibly be deemed to "aris[e] under" federal law. *See Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974) (per curiam); *Gully v. First National Bank*,

299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936) (both holding that an action generally does not "aris[e] under" federal law for removal purposes unless the existence of a federal question appears on the face of the complaint).

■■■ Alameda's argument is overbroad. The courts have frequently found removal proper, on an "arising under" theory, notwithstanding the fact that the complaint is devoid of any mention of federal law. To be sure, "arising under" removal is not proper simply because the factual allegations of the complaint *could have* formed the basis for reliance on federal law; where the facts of a case support both a federal and a state law claim, the "face-of-the-complaint rule" provides that "the party who brings [the] suit is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), meaning that the plaintiff in such a case can confine its complaint to a state law theory and proceed in state court without fear of removal to federal court. 1A *Moore's Federal Practice* ¶ 0.160, at 185 (2d ed. 1981); *see Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir. 1981). However, where the allegations of the complaint support *only* a federal claim, and not a state law claim as well, "arising under" removal is always proper, even where the complaint relies, on its face, exclusively on state law. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2, 101 S.Ct. 2424, 2427 n.2, 69 L.Ed.2d 103 (1981). This exception to the "face-of-the-complaint rule" derives from the principle that removal should not be defeated merely because the plaintiff has inadvertently, mistakenly, or fraudulently concealed the federal question that would *necessarily* have appeared if the complaint had been well pleaded. 1A *Moore's Federal Practice* ¶ 0.160, at 185–87 (2d ed. 1981). One result of this exception is the rule that "arising under" removal is proper, even where the complaint relies solely on state law, if the state law relied upon by

the plaintiff has been preempted by federal law, meaning that federal law, by definition, provides the only possible legal basis for the relief sought by the plaintiff. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233–34 (2d Cir. 1978); *Palm Beach Co. v. Journeymen's and Production Allied Services Local 157*, 519 F.Supp. 705, 708 (S.D.N.Y.1981); *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Local 1–35*, 511 F.Supp. 1180, 1187 (S.D.N.Y.1981).

Having these principles in mind, the Court considers the petition filed by Alameda in this case. While Alameda's petition nowhere mentions federal law, the allegations of the petition make it plain that Alameda *could have* commenced this action on a federal law theory. The gravamen of Alameda's second petition is its request for a stay of the second of two arbitrations demanded by the Trades Council pursuant to the Agreement. The Court observes that section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) ("Section 301(a)"), provides a procedural mechanism by which an employer can commence an action in state or federal court to enforce, as a matter of federal labor law, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), a collective bargaining agreement in an industry affecting interstate commerce. It has long been held in this Circuit that the jurisdictional grant embodied in Section 301(a) permits an employer to commence a federal court action for a stay of a union-demanded arbitration on the theory that the particular controversy sought to be arbitrated is not, as a matter of federal labor law, covered by the collective bargaining agreement relied upon by the union. *Black-Clawson Co. v. Machinists Lodge 355*, 313 F.2d 179, 182 (2d Cir. 1962); *United Artists Eastern Theatres, Inc. v. Local 640, International Alliance of Theatrical Stage Employees*, 465 F.Supp. 709, 711 (E.D.N.Y. 1979). Since Alameda's action is precisely an action in which an employer seeks a stay of a union-demanded arbitration on the theory that the particular controversy sought to be arbitrated is not governed by the collective bargaining agreement relied upon by the union, it is plain that Alameda could have commenced its action in federal court by relying on substantive principles of federal labor law and invoking Section 301(a) as the basis for original federal jurisdiction.

Alameda chose, however, to proceed in state court via a state jurisdictional mechanism (N.Y.Civ.Prac.Law § 7503(b)) and in sole reliance on New York contract law as a substantive basis for relief. (It appears likely, and the Court will assume for the purposes of the present discussion, that N.Y.Civ.Prac.Law § 7503(b) does provide a procedural vehicle for a person to petition a state court for a stay of arbitration on the ground that the petitioner is not, as a matter of New York contract law, subject to a binding arbitration agreement with respect to the issue sought to be arbitrated.) Alameda thus argues that removal of this action to federal court was improper under the "face-of-the-complaint rule." However, as previously stated, a state court action in which the plaintiff eschews reliance on federal law in favor of an alternative state law theory may be removed to federal court as an action "arising under" federal law, notwithstanding the "face-of-the-complaint rule," if the state law relied upon by the plaintiff has been preempted by federal law. The removal at issue here was thus proper, and Alameda's remand motion must thus be denied, if the substantive state contract law relied upon by Alameda's petition been preempted, in the context of an action such as this one, by the federal labor law that governs actions under Section 301(a).

In *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), the United States Supreme Court considered an action that, like this one, had been brought in state court under state law and sought to enforce a collective bargaining agreement. The state court rejected the argument that federal labor law governed, and decided the case under principles of state contract law. The Supreme Court, observing that "[t]he ordering and adjusting of competing interests through a process of free and voluntary collective bargain-

ing is the keystone of the federal scheme to promote industrial peace," *id.* at 104, 82 S.Ct. at 577, and that "[s]tate law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy," *id.*, held that "[t]he dimensions of [Section 301(a)] require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute," *id.* at 103, 82 S.Ct. at 576. Accordingly, the Court concluded that "in enacting [Section 301(a)] Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id.* at 104, 82 S.Ct. at 577.

 *Lucas Flour* requires this Court to conclude that the substantive state contract law relied upon by Alameda's petition has, in the context of an action such as Alameda's, been preempted by the federal law that governs actions under Section 301(a). Alameda's right to relief, if any, thus depends entirely on federal labor law. As a result, Alameda's claim is properly viewed as one arising under federal law, meaning that the action was removable to this Court notwithstanding the fact that Alameda's petition nowhere mentions Section 301(a). *Accord, Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir. 1980); *Avco Corp. v. Aero Lodge No. 737, International Association of Machinists,* 376 F.2d 337, 340 (6th Cir. 1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Paramount Bag Manufacturing Co. v. Rubberized Novelty Workers' Local 98,* 353 F.Supp. 1131, 1134–36 (E.D.N.Y.1973); *In re Contessa Lingerie, Inc.,* 227 F.Supp. 37, 39 (S.D.N.Y.1964). Accordingly, Alameda's motion for an order remanding this action to state court is denied.

## II

Having determined that Alameda's motion for an order remanding this action to state court must be denied, the Court would, in the normal course, adjudicate the merits of respondent Pitta's motion for summary judgment. For the reasons that follow, however, the Court has determined not to follow this course. Instead, the Court orders that proceedings in this action be stayed during the pendency of Alameda's first state court petition, and accordingly denies respondent Pitta's summary judgment motion without prejudice to renewal subsequent to the state court's final adjudication of that petition.

 As noted, the central issue raised by this action is raised in identical fashion by Alameda's first petition, which also names Pitta as the respondent and which is still pending in state court. It is well settled in this Circuit that a federal court may, in the exercise of its discretion, stay proceedings in an action pending before it where, as here, there is a similar proceeding pending before a state court. *Giulini v. Blessing,* 654 F.2d 189, 193 (2d Cir. 1981). The courts of this Circuit have articulated seven factors that control a court's determination whether to order a stay on the parallel-state-proceeding theory: (1) identity of parties and issues in both actions; (2) considerations of comity; (3) promotion of judicial efficiency; (4) adequacy and extent of relief available in the alternative forum; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel, and witnesses; and (7) possibility of prejudice to a party as a result of the stay. *Bryant v. Commissioner of Social Services,* 530 F.Supp. 1175, 1185 n.5 (S.D.N.Y.1982); *Leber-Krebs, Inc. v. Clinton,* 517 F.Supp. 593, 596 (S.D.N.Y.1981); *Universal Gypsum Inc. v. American Cyanamid Co.,* 390 F.Supp. 824, 827 (S.D.N.Y.1975). Upon considering these seven factors according to the extent to which they are implicated by the facts of this case, the Court concludes that the balance weighs heavily in favor of staying proceedings in this action.

 The Court analyzes the seven relevant factors, in light of the facts of this case, according to the order in which they are listed above. (1) The parties to this action are identical to the parties in the pending state proceeding. The central issue in each case is the same, namely, whether Alameda's purported withdrawal from the Agreement had the effect of relieving

Alameda from the arbitration provisions contained in the Agreement, including any obligation to arbitrate the effectiveness of Alameda's purported withdrawal from the Agreement. (2) Since the state court denied respondent Pitta's application for summary dismissal of Alameda's first petition, respondent Pitta's motion for summary judgment with respect to Alameda's second petition raises important considerations of comity. To explain, while principles of *res judicata* or collateral estoppel probably do not bar this Court from granting summary judgment in respondent Pitta's favor, such a determination would undeniably be an affront to the state court, given its refusal to grant a nearly identical application. (3) Judicial efficiency would be disserved by having two judges simultaneously adjudicate the identical issue raised by the two petitions. (4) Since actions under Section 301(a) unquestionably may be brought in state court, *see Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 506, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962), the parties are entirely capable of obtaining appropriate relief from the state court with respect to Alameda's first petition and, by extension, with respect to any issues that Alameda's second petition has in common with its first petition. (5) As noted above, the record before the Court demonstrates that discovery has been completed in Alameda's state court action and that the action is about to be placed on the state court's trial calendar, giving this Court every reason to believe that Alameda's state court petition will be disposed of promptly. (6) Since the state court before which Alameda's first petition is pending is located literally across the street from this Court, it can hardly be argued that this Court is a more convenient forum than the state court for the parties, their counsel, and their witnesses. (7) The Court sees no likelihood that a stay will prejudice any party to this litigation. The Impartial Chairman has voluntarily stayed the arbitration that is the subject matter of Alameda's second petition. Any wage-rate adjustment to which Alameda's employees may be found entitled can be awarded retroactively. While the state court's adjudi-

cation of Alameda's first petition may have *res judicata* or collateral estoppel effect with respect to this Court's adjudication of one or more of the issues raised by Alameda's second petition, there is no reason to view the state court as any less capable than this Court to arrive at a proper determination of the rights of the parties with respect to such issues. To be sure, the state court is required to apply principles of federal labor law in adjudicating Alameda's first petition; however, such state court adjudication of questions of federal labor law is fully contemplated by the jurisdictional scheme created by Section 301(a).

Since the balance of factors thus plainly weighs heavily in favor of staying proceedings in this action, the Court has determined to exercise its discretion to order such a stay. Accordingly, proceedings in this action are stayed pending the state court's final adjudication of Alameda's first petition. Respondent Pitta's motion for summary judgment is denied without prejudice to renewal subsequent to the state court's determination of Alameda's first petition.

### Conclusion

Alameda's motion for an order remanding this action to state court is denied. Respondent Pitta's motion for summary judgment is denied without prejudice to renewal subsequent to the state court's final adjudication of the petition filed by Alameda in state court on June 9, 1981. Proceedings in this action are stayed during the pendency of Alameda's aforementioned state court petition. This action is placed on the Suspense Docket of this Court.

It is so ordered.