Prince E. GILLIARD, on behalf of himself and all persons similarly situated, namely, Edith Goodman, Mary Persaud, Marian Benjamin, Ruth Jaisarie, Jacqueline Willoughby, Berlena H. Robinson, Barbara Levy, Sadie Phillips, Easthlyn Regis, Germaine Quiroz and Eula McCall, Plaintiffs,

v.

NEW YORK PUBLIC LIBRARY SYSTEM, Otillia Pearson, Priscilla Southern, Samuel Memberg, Irene Percelli, Antonio Medina, Edwin Holgrem, David Bauer, Robert Goldstein, Defendants.

No. 84 Civ. 1038 (RWS).

United States District Court, S.D. New York.

Nov. 6, 1984.

Paulette M. Owens, New York City, for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendants; Allan H. Weitzman, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendants New York Public Library System, Otillia Pearson, Priscilla Southern, Samuel Memberg, Irene Percoli, Antonio Medina, Edwin Holgrem, David Bauer, and Robert Goldstein (collectively, "the Library") have moved for an order pursuant to Rule 12(b)(6) dismissing plaintiff Prince Gilliard's ("Gilliard") claims under Title VII and 42 U.S.C. §§ 1981, 1983 and 1985 and his pendent state claims of negligence and intentional infliction of emotional distress, and for an order pursuant to Rule 56(b) granting summary judgment in favor of the Library as to Gilliard's contractual claims. For the reasons stated below, the Library's motion for dismissal will be granted in part and denied in part, and the motion for summary judgment will be granted.

## Facts

The allegations raised by Gilliard in this case stem from the Library's dissolution of its Computer Input Division ("C.I.D.") and the subsequent demotion or dismissal of C.I.D. employees. Gilliard, a black male employed by the division, was informed on June 23, 1980 that C.I.D. would be dissolved effective June 30, 1981 and that all C.I.D. employees would be terminated at that time unless they found other library jobs. C.I.D. employees were also informed that neither the Library nor Local 1930, the union representing the C.I.D. division ("the Union"), would be responsible for finding them employment and that they would be given no preferential treatment when applying for other library jobs. The Union subsequently filed a grievance against the Library on November 26, 1980, alleging that the dissolution of the unit breached the Union's collective bargaining agreement ("the agreement") with the Library. In accordance with the agreement, a binding arbitration hearing was held in June, 1981 during which the grievance was withdrawn and a settlement reached in which the C.I.D. employees were promised preferential treatment in obtaining new Library jobs. The arbitrator maintained jurisdiction over any settlement issues until October 1, 1981.

On May 26, 1981, Gilliard and other C.I.D. employees were informed that they would be terminated on June 30, 1981 unless they accepted lower paying positions. On June 30, 1981 the C.I.D. division of the Library was dissolved. Having been refused employment with the Library's newly created computer unit, Gilliard assumed a lower position in another division of the Library with a consequent reduction in salary. Shortly before April 20, 1981, the only white employee of C.I.D. was offered and accepted a lateral transfer. On March 24, 1982 Gilliard filed a complaint with the EEOC alleging that his demotion was a result of racially based discrimination. Gilliard subsequently commenced this action on behalf of himself and all other similarly situated minority employees of C.I.D. on

February 14, 1984. He charges the Library with the intentional infliction of emotional distress, negligence, interference with economic relations, breach of contract, and interference with Gilliard's contractual relationship. In addition, it is assumed by Gilliard's references to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. §§ 1981, 1983 and 1985 in the "jurisdiction" section of his complaint that he also asserts causes of action pursuant to those statutes based on both the dissolution of C.I.D. and his subsequent demotion and on the Library's alleged pattern and practice of discrimination against Gilliard and other minority employees. Such federal claims, however, are not properly stated and numbered.

Asserting that all Gilliard's federal claims are time-barred, the Library has now moved for an order pursuant to Rule 12(b)(6) dismissing Gilliard's claims under Title VII and 42 U.S.C. §§ 1981, 1983 and 1985 and the state law claims of negligence and intentional infliction of emotional distress and for an order pursuant to Rule 56(b) granting summary judgment in favor of the Library as to Gilliard's contractual claims.

The primary issue presented by the motions is whether Gilliard's federal causes of action are barred by the applicable statutes of limitations, a decision which may also determine the status of the pendent state claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The resolution of this issue rests first on a determination of the applicable statutes, and more importantly, on a determination of the date on which the specific causes of action accrued.

### The Federal Statutory Claims

■ Preliminarily, we note that Gilliard's § 1983 claims must be dismissed because the Library's employment decisions do not satisfy the "state action" requirements of section 1983. A prerequisite for any relief under § 1983 is a showing that the defendant has acted under color of state law. *Graseck v. Mauceri,* 582 F.2d 203 (2d Cir.), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979). The test of whether or not a private group's actions constitute state action is whether there is "a sufficiently close nexus between the state and the challenged action of the entity so that the action of the latter may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In order to claim that a private employers decision should be treated as state action a plaintiff must prove that the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be in law deemed that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). The two major factors that courts rely upon in making this decision are the extent to which the private group performs a function that "has been traditionally the exclusive prerogative of the state." *Rendell-Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418, and the degree to which it receives state funding. *Id.*

■ Gilliard's only attempt to meet this required showing of "state action" is his bare allegation in the complaint that "[u]pon information and belief defendant New York Public Library ("NYPL") is a quasi-governmental entity supported by funds from the City and State of New York" (Complaint, ¶ 3). His papers on this motion provide no further support for this allegation. In *New York Public Library v. PERB,* 45 A.D.2d 271, 274, 357 N.Y.S.2d 522, 525 (1st Dep't 1974), *aff'd,* 37 N.Y.2d 752, 374 N.Y.S.2d 625, 337 N.E.2d 136 (1975), the court held that the Library was not a government or public employer within the meaning of the Taylor Act, Civil Service Law § 201. After carefully reviewing both the historical background and the manner of operation of the Library, the court noted:

[N]ot only is the Library a separate and distinct body from the City, but by contract it (the Library) retains general con-

trol over the direction and management of its own affairs. And more specifically, by contract and in practice, the hire, discharge and promotion of the employees, as well as the supervision of their daily and overall duties are vested in the Library.... There is no proof in the record that the City interferes in these matters or has the power to do so. *Id.* at 528. *Cf. La Marca v. Brooklyn Public Library,* 256 A.D. 954, 10 N.Y.S.2d 129 (2d Dep't 1939); *Brooklyn Public Library v. Craig,* 201 A.D. 722, 194 N.Y.S. 715 (1922). Gilliard's bare assertion that the Library is a "quasi-governmental entity" is not enough to overcome a judicial determination of the Library's independence from the State. Gilliard's assertion that the Library is supported by government funds also fails to meet the requirement of a showing of state action. As the Supreme Court has noted, the mere receipt of public funds by an entity "does not make [that entities'] discharge decisions acts of the State." *Rendell-Baker v. Kohn, supra,* 457 U.S. at 840, 102 S.Ct. at 2771. While state funding may be a factor in determining if a private group's action were taken under color of state law, state funding alone does not transform employment decisions into "state action" for purposes of § 1983. *Id.*

■ In addition, Gilliard's § 1985 claims of conspiracy must be dismissed for failure to state a cause of action. Section 1985 requires a conspiracy between "two or more persons," a requirement that is not met where a conspiracy alleged "is essentially a single act by a single corporation acting exclusively through its own directors, officers and employees, each acting within the scope of his employment." *Herrmann v. Moore,* 576 F.2d 453, 457 (2d Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *see Girard v. 94th St. & 5th Ave. Corp.,* 530 F.2d 66, 70 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). In this case, Gilliard has charged that "two or more of the defendants" (Complaint at 2), all of whom are employees of the Library (Complaint, ¶ 54), conspired to deprive him

of his rights. Because he has failed to allege that these employees acted other than in the normal course of their duties or were "motivated by an independent personal stake in achieving the corporation's objective," *Girard v. 94th St. & Fifth Ave. Corp., supra,* 530 F.2d at 72, Gilliard's claim of conspiracy among the defendants fails to meet the requirements of § 1985.

■ Gilliard's complaint also alleges the existence of a conspiracy within § 1985 between the Library and the Union (Complaint, ¶¶ 68, 79). As this Circuit has repeatedly held, however, when conspiracy is alleged "complaints containing only vague or conclusory allegations will not survive a motion to dismiss." *Legal Aid Society v. Association of Legal Aid Attorneys,* 554 F.Supp. 758, 766 (S.D.N.Y.1982); *see Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1971); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Gilliard has failed to plead with particularity the conspiracy alleged between the Library and the Union. His conclusory allegations are insufficient to meet "the somewhat stringent pleading requirements of this Circuit" when conspiracy is alleged. *423 South Salina St. v. City of Syracuse,* 566 F.Supp. 484, 493 (N.D.N.Y.1983); *see also Legal Aid Society v. Association of Legal Aid Attorneys, supra,* 554 F.Supp. at 766.

Because Gilliard's complaint offers little guidance, we must also delineate the precise federal causes of action brought pursuant to Title VII and § 1981. Gilliard plainly claims that the Library's decision to dissolve C.I.D. and to terminate his employment with the unit was discriminatory. The complaint also appears to allege another cause of action arising out of the Library's treatment of Gilliard relative to non-minority employees after it notified him of its decision as to C.I.D. Finally, Gilliard alleges that the Library has engaged in a general pattern and practice of discrimination in areas including pay structure, training, benefits and promotions. Each of these causes of action must be

dealt with separately for statute of limitations purposes.

■ Because Congress did not establish a statute of limitations applicable to actions brought under 42 U.S.C. § 1981, the most analogous state statute of limitations is binding. *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The applicable statute of limitations for federal civil rights claims brought in New York is N.Y.C.P.L.R. § 214(2), which provides for a three year period. *Pauk v. Board of Trustees of City University of New York,* 654 F.2d 856 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Hudson v. IBM,* 620 F.2d 351, 352 n. 2 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *Montagna v. O'Hagan,* 402 F.Supp. 178, 180 (E.D.N.Y.1975). The appropriate statute of limitations for Title VII claims brought in New York is governed by 42 U.S.C. § 2000e–5(e) which holds that a plaintiff must file with the EEOC within 300 days of the discriminatory act. Timely filing is a prerequisite for bringing suit in federal court, although the requirement may be excused on equitable grounds. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

### The Dissolution of C.I.D.

If the date on which the cause of action relating to the dissolution of C.I.D. and the termination of Gilliard's job with the unit accrued is considered to be June 23, 1980, the day on which he received notification of C.I.D.'s future dissolution, both the 42 U.S.C. § 1981 claim and the Title VII claim are time barred. The EEOC claim was filed more than 300 days later, on March 24, 1982, and the § 1981 claim was brought more than three years later. Gilliard argues, however, that the cause of action did not accrue until, at the earliest, June 30, 1981, the day on which he was actually demoted, that because he has asserted a continuing violation, the limitation period

has not yet begun to run, and that therefore the claims are timely.

■ The actual event giving rise to this claim was the termination of Gilliard's employment with C.I.D. on June 30, 1981. Numerous cases have held, however, that the statutory limitation period begins to run when an employee is notified of the employer's decision to terminate the employee, not when the actual termination occurs. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Pauk v. Board of Trustees of City University of New York, supra,* 654 F.2d 856; *Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276, 1279 (E.D.Pa.1982). The notification itself is sufficient to inform the employee that his rights have been violated. As the Supreme Court noted in *Chardon,* "respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which the suit must be filed." *Chardon v. Fernandez, supra,* 454 U.S. at 8, 102 S.Ct. at 29. Gilliard's attempt to distinguish his demotion from *Ricks* and *Chardon* is not convincing; even if the decision to terminate his employment with C.I.D. was not effective until the actual date of the demotion, the demotion itself was a mere result of the earlier decision and not a separate discriminatory act.

■ Gilliard argues, however, that the notification letter was in itself "facially neutral" and that the discriminatory basis of the dissolution and his termination only became apparent during the following year. While the Library's subsequent action may have *revealed* the discriminatory purpose or effect of its decision to terminate Gilliard's job with C.I.D., the actual violation, alleged to be the elimination of the position, was complete as of the date of notification. At that time Gilliard was informed that he would be terminated unless he found another Library job, that no effort would be made by the Library to se-

cure him another job, and that he would be given no priority in obtaining positions. The crux of Gilliard's termination complaint is that the Library followed through on its initial decision. For accrual purposes, the carrying out of the decision made and communicated on June 23, 1980 is not in itself a separate violation, and the date of notification remains the relevant date for determining the accrual of Gilliard's cause of action for the termination of his former position. *Delaware State College v. Ricks, supra.*

In addition, the facts do not support Gilliard's argument that this claim of position elimination involves an ongoing violation, thereby exempting him from the strict time limitations of Title VII and the Civil Rights Act under the doctrine of continuing discrimination. When a cause of action is based not on a discrete act of discrimination but rather on an ongoing violation, the doctrine of continuing discrimination operates to remove the limiting time requirements in order to "provide a remedy for past actions which operate to discriminate against the plaintiff at the present time." *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir. 1975). As the Supreme Court has noted, however, merely alleging a present *effect* of past discrimination is not sufficient to establish an ongoing violation. *Delaware State College v. Ricks, supra,* 449 U.S. at 258, 101 S.Ct. at 504; *United Airlines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The primary question is if there is a present violation of terminated positions, not just a present effect of the past termination. *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 (1st Cir.), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1979). In this case, Gilliard alleges that his salary remains at a lower level than before and that his career plans have been impaired by the Library's decision to dissolve C.I.D. These claims do not represent anything other than mere effects of the prior violation. *See United States v. Smith,* 649 F.2d 305 (5th Cir.1981), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983).

Furthermore, Gilliard may not transform his claim as to C.I.D.'s dissolution and the termination of his job with the unit into an ongoing violation simply by simultaneously alleging a persistent and ongoing pattern of discrimination by the Library. While these claims may in themselves state a cause of action, and certainly represent evidence that may support his claim of discrimination, they do not in themselves support a finding that the dissolution of C.I.D. and the subsequent termination of Gilliard's employment with the unit consisted of an ongoing violation. In *Malarkey v. Texaco, Inc.,* 559 F.Supp. 117 (S.D.N.Y.1982), *aff'd* 704 F.2d 674 (2d Cir. 1983), the plaintiff's complaint alleged a long term pattern of sex discrimination in addition to specific allegations of discriminatory demotions. The Court held that the earlier of the demotions was barred by the statute of limitations despite plaintiff's claims that it was part of a persistent pattern of discrimination: "Completed acts such as termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing nature.'" *Id.* at 121 (quoting *Corbin v. Pan American World Airways,* 432 F.Supp. 939, 944 (N.D. Cal.1977)). A plaintiff may not simply characterize a discrete act of discrimination as ongoing in order to circumvent stringent time limits. *Ricks, supra,* 449 U.S. at 258, 101 S.Ct. at 504; *Corbin v. Pan American World Airways, supra,* 432 F.Supp. at 944.

Finally, nothing in this case suggests that equity requires excusing Gilliard's untimely filing with the EEOC. Although the Supreme Court ruled in *Zipes v. Trans World Airlines, Inc., supra,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 that the timely filing of an EEOC charge is not a jurisdictional prerequisite to bringing a Title VII suit in federal court but rather a requirement subject to waiver, estoppel or tolling when equity requires, Gilliard has given no evidence that equitable considerations weigh in favor of excusing his untimely filing. Gilliard does not allege that

the Library wrongfully concealed facts from him, *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 928 (5th Cir. 1975) or otherwise engaged in behavior that would merit extending the applicable time limits. *See Hart v. J.T. Baker Chemical Corp.*, 598 F.2d 829, 932 (3d Cir.1979). Gilliard was aware right from the day notice was first given concerning the elimination of the unit that the Library had no intention of helping him find alternative employment on the same level. In any event, later attempts to mitigate the effects of a discriminatory act will not be held to estop defendant from asserting the statute of limitations, absent evidence of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge. *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982). Gilliard's federal statutory claims as to the discriminatory basis of C.I.D.'s dissolution and the termination of his employment with the unit, therefore, must be dismissed as untimely.

**Post-Notification Action**

Gilliard's complaint also suggests the existence of a separate cause of action under Title VII and § 1981 based on the Library's actions after its decision to dissolve C.I.D. In the complaint he alleges that he and the other members of the division were notified on May 26, 1981 that they would be terminated on June 30, 1981 "if they did not accept lower paying positions." (Complaint, ¶ 26). He also alleges that in April of 1981 the only white employee of C.I.D. was given a lateral transfer and that white employees in other reorganized units were maintained at their prior grade and salary levels. (Complaint, ¶ 36).

 The Library apparently views these allegations as an aspect of Gilliard's complaint about the dissolution of C.I.D. and his subsequent demotion. Read in a light most favorable to the plaintiff, however, these allegations are in themselves sufficient to state an independent cause of action. Gilliard's initial complaint pertains

to the termination of C.I.D. The claim of demotion, on the other hand, relates to the Library's discriminatory treatment of him once the decision to dissolve C.I.D. had been made. Even if this cause of action was not denominated as such in his complaint, Gilliard's allegations of racial discrimination are sufficient to state a claim under Title VII and § 1981.

 The date on which this cause of action accrued was May 26, 1981, when Gilliard and other C.I.D. employees were informed that they would have to take lower level jobs. *Chardon v. Fernandez, supra*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6; *Pauk v. Board of Trustees of City University of New York, supra*, 654 F.2d 856. The EEOC claim, however, was filed more than 300 days after the cause of action accrued. As noted above, nothing in this case suggests that equity requires excusing his untimely filing of the EEOC charge. *See, e.g., Hart v. J.T. Baker Chemical Corp., supra*, 598 F.2d at 932. Accordingly, Gilliard's claim under Title VII as to the Library's discriminatory actions after it decided to dissolve C.I.D. is dismissed. Because the § 1981 claim was filed within three years of this date, however, it is timely.

**Pattern of Discrimination**

 Gilliard also alleges in his complaint that the Library has engaged in a long term pattern and practice of racial discrimination against its black employees. Specifically, he states that the Library assigns black persons to racially-segregated areas, denies them access to jobs offering opportunity for advancement, fails to promote or transfer black employees, denies them access to training and to notice of new jobs, pays blacks at a lower rate and denies them salary increases, gives blacks poor job performance evaluations, provides blacks with inferior fringe benefits, and terminates a disproportionate number of black employees. These allegations are sufficient to state a cause of action under Title VII and § 1981. In addition, because this claim by its very nature alleges a

continuing violation, there is no relevant date on which the cause of action accrued, *Olson v. Rembrandt Printing Co., supra,* 511 F.2d at 1234, and the claim is not barred by the statute of limitations.

■■■■ Even though the claim was filed in a timely fashion, however, the Title VII claim must be dismissed. The general rule is that Title VII claims can only be maintained in federal court if they are reasonably related to the allegations brought before the EEOC. Claims which are "not within the scope of the EEOC investigation which reasonably could be expected to grow out of the administrative charge are properly subject to dismissal for lack of subject jurisdiction." *Grant v. Morgan Guaranty Trust Co. of New York,* 548 F.Supp. 1189, 1191 (S.D.N.Y.1982). In this case, Gilliard's EEOC claim states that "I am non-white and have been denied equal terms, conditions and privileges of employment and demoted on or about July 1, 1981." (Exhibit D of defendant's motion). Even if Gilliard is given the benefit of a broad reading of the EEOC complaint, the allegations as to a general pattern of discrimination by the Library fall outside of the scope of the charge. Gilliard's EEOC charge was limited to a claim of discriminatory discharge. Because the EEOC charge did not give the Library sufficient notice of Gilliard's intention to raise allegations pertaining to discrimination in wages, benefits and training, Gilliard's Title VII claim as to these allegations must be dismissed. *Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1337–38 (S.D.N.Y.1978), *aff'd without op,* 607 F.2d 995 (2d Cir.1979); *Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184, 1193 (D.Md.1977).

**Contract Claims**

Gilliard has characterized his remaining claims, including the breach of contract, interference with economic relations and interference with contractual relationship claims, as state causes of action which are pendent to his federal causes of action. The Library, on the other hand, contends that even though Gilliard's complaint is pleaded solely in terms of state law as far as these claims are concerned, it alleges facts that state a claim under section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) ("Section 301(a)") and that such claims are uniquely federal causes of action. The Library further argues that the distinction is significant because the § 301(a) claims are time-barred.

■■■ Because these claims all involve the collective bargaining agreement between the Library and the Union, they could have been brought pursuant to section 301(a), which provides a mechanism by which an employee may sue in federal court to enforce, as a matter of federal labor law, a collective bargaining agreement. *Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). The general rule is that where the facts of a case support both a federal and a state law claim, "the party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). This rule is not applicable, however, if the state law relied upon has been preempted by federal law. *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233–34 (2nd Cir.1978); *Alameda Room, Inc. v. Pitta,* 538 F.Supp. 1072 (S.D.N.Y. 1982).

■■■ Because the substantive state contract law relied upon by Gilliard has been preempted by the federal labor law that governs actions under Section 301(a), Gilliard's contract claims must be dealt with as federal claims. The Supreme Court has repeatedly held that substantive federal law applies to suits on collective bargaining agreements covered by § 301(a). *Republic Steel v. Maddox,* 379 U.S. 650, 655, 85 S.Ct. 614, 617, 13 L.Ed.2d 580 (1964); *Local 174, Teamsters v. Lucas Flour,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Because "the subject matter of § 301(a) is peculiarly one that calls for uniform law'," *Pennsylvania R Co. v. Public*

*Service Comm'n.,* 250 U.S. 566, 569, 40 S.Ct. 36, 37, 64 L.Ed. 1142 (1919), the Court has concluded that "[t]he dimensions of [section 301(a)] require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." *Local 174, Teamsters v. Lucas Flour, supra,* 369 U.S. at 103, 82 S.Ct. at 576. Gilliard's decision to characterize these claims as state claims does not affect the applicability of federal law; as the Sixth Circuit has held:

> [a]ll rights and claims arising from a collective bargaining agreement in an industry affecting interstate commerce arise under Federal Law. State law does not exist as an independent source of private rights to enforce collective bargaining contracts. While State courts may have concurrent jurisdiction, they are bound to apply Federal law.... The force of Federal preemption in this area of labor law cannot be avoided by failing to mention Section 301 in the Complaint.

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers,* 376 F.2d 337, 339–40 (6th Cir.1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). *See also Brown v. United Parcel Service, Inc.,* 560 F.Supp. 146 (1982); *Alameda Room Inc. v. Pitta, supra,* 538 F.Supp. at 1076–1077.

Because Gilliard's contract claims arise solely under Federal law, the relevant statute of limitations for Section 301 claims must be applied. The Supreme Court has held that the timeliness of most Section 301 suits should be determined "by reference to the appropriate state statute of limitations." *United Auto Workers v. Hoosier,* 383 U.S. 696, 704, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). An examination of the complaint and the papers submitted in connection with this motion, however, reveals that Gilliard's contract claims fall squarely within the parameters of *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). *Del Costello* involved a suit by employees against an employer and union following an arbitration procedure in which they alleged that the employer breached

provisions of a collective bargaining agreement and that the union breached its duty of fair representation. The Court differentiated between the claim before it and more straightforward suits under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of a collective bargaining agreement by an employer, *see, e.g., Auto Workers v. Hoosier,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), by noting both that the case involved an agreement to submit disputes to arbitration and that the employee was also objecting to the union's activities during the grievance and arbitration procedure: "The suit is thus not a straightforward breach of contract suit under § 301, as was *Hoosier,* but a hybrid § 301/fair representation claim, amounting to 'a direct challenge to the private settlement of disputes under [the collective-bargaining agreement]'" *Id.* at 2291; (citations omitted). In such a case, the Court ruled, the applicable limitations period is provided by section 10(b) of the National Labor Relations Act, *as amended,* 29 U.S.C. § 160(b), which establishes a six-month limitation period.

In the case at hand, Gilliard is suing only his employer and not the Union. As the Court in *Del Costello* noted, however, "[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.* at 2291. Gilliard's relations with the Library are governed by a collective bargaining agreement that requires the employee to submit to arbitration and which holds that an arbitration award will be final and binding; all of his contract claims either relate to the grievance at issue in the settlement between the Union and the Library, or arise under the collective bargaining agreement. To succeed on his claims against the Library which relate to the grievance settled by the Union, Gilliard would have to show that the Union did not properly represent him in its dealings with the Library. Gilliard would have to make the same showing to succeed on any claims that he did not pursue through the procedures established

in the collective bargaining agreement. Numerous cases have held that a plaintiff may not bring an action under section 301 until he has exhausted all administrative remedies. *See, e.g., Republic Steel Corp. v. Maddox, supra,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580; *Dinger v. Anchor Motor Freight, Inc.,* 501 F.Supp. 64, 70–71 (S.D.N.Y.1980). An exception exists only when a plaintiff can show that pursuing those remedies would be useless because of inadequate representation by a union.

Thus, Gilliard's contract claims necessarily involve both contractual claims against the Library and fair representation claims. The Court in *Del Costello* chose to deal with cases involving allegations of inadequate representation by unions in a different manner because such cases involve a breakdown in normal administrative procedures. In this case, Gilliard is implicitly challenging the manner in which the Union and the Library resolve problems arising under the collective bargaining agreement. His decision not to sue the Union does not affect the status of these claims as hybrid section 301/fair representation claims within the meaning of *Del Costello.*

■ Even if the latest possible date on which these claims can be seen to have accrued is used—June 30, 1982, when Gilliard was demoted—this suit was filed more than six months after the commencement of the limitations period. Thus Gilliard's contract claims are barred by the six-month statute of limitations imposed by *Del Costello.* Summary judgment is entered for the Library.

**State Claims**

■ Finally, the Library has moved to dismiss Gilliard's state tort claims of intentional infliction of emotional distress and negligence for failure to state a cause of action. Gilliard's cause of action for negligence is based on the Library's alleged failure to establish adequate grievance policies and procedures as to employee suspension, termination and grievances, and its failure to hire, train and oversee competent supervisors. This court has found no case under New York law allowing a negligence claim in a fact situation such as this. In situations where a defendant's employee caused physical injury to a third party and the defendant was negligent in selecting or controlling the employee, New York courts have recognized an employer's duty to refrain from hiring employees whom the employer reasonably should have known to be dangerous and to exercise reasonable care in hiring and supervising employees. *See Bushey & Sons, Inc. v. United States,* 276 F.Supp. 518, 525 (E.D.N.Y.1967); *Spica v. Connor,* 56 Misc.2d 364, 288 N.Y.S.2d 719, 723 (Suffolk County 1968). These cases, however, are not relevant to an employment discrimination case where no physical injury is involved. No New York court has extended an employer's duty to hire or supervise its employees to cases in which the alleged negligence is a failure to establish adequate grievance procedures or to prevent employees from acting in a discriminatory manner. *But see Buddle v. Heublein, Inc.,* 81 Civ. 7671 (S.D.N.Y. Jan. 25, 1984).

■ Furthermore, both Gilliard's negligence claim and his intentional infliction of emotional distress claim must be dismissed for failure to exhaust his grievance remedies. Even though these claims are characterized as causes of actions in tort, all the acts complained of constitute grievances under the collective bargaining agreement. Gilliard's cause of action for the intentional infliction of mental distress is based entirely on the Library's decisions to dissolve C.I.D. and to demote Gilliard. As noted above, his cause of action for negligence is based on the Library's alleged failure to establish grievance procedures and to supervise its employees. In both cases, these claims could have been pursued through the Union as violations of the collective bargaining agreement.

If Gilliard had challenged the Library's conduct as a violation of the agreement, however, his claim would have been barred for the same reasons that his contract claims were dismissed above. In a similar case, *Dinger v. Anchor Motor Freight*

*Inc., supra,* 501 F.Supp. 64, the court refused to allow a plaintiff pleading intentional infliction of emotional distress for claims that arose under a contract to bypass the normal grievance procedures established by the agreement: "I do not see a reason ... why plaintiff's failure to exhaust his grievance remedies should not also bar a claim framed in tort, at least where as here, all the acts complained of constituted grievances under the agreement." *Id.* at 71. As the court went on to explain,

> It is foreseeable and understandable that any employee who allows unresolved grievances to accumulate can reach a point of suffering emotional distress from feeling that he has been repeatedly wronged ... This does not change a contract claim into a tort claim .... Moreover to allow him to reach that point without submitting his grievances to dispute resolution machinery which the union and the employee have chosen as exclusive and to allow him to proceed in court on a tort theory would deprive both parties to the agreement of the benefit of their bargain. This could result in making employees less willing to bind themselves to exclusive grievance-arbitration machinery and could undermine the union's position as collective bargaining representative.

■ Furthermore, just as Gilliard's reliance on substantive state contract law was misplaced because of the preemption doctrine, his reliance on state tort law must fail because the tort law has been preempted by section 301 of the Labor-Management Relations Act. *See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers, supra,* 376 F.2d at 339–40 ("All rights and claims arising from a collective bargaining agreement in an industry affecting interstate commerce arise under Federal law.") In *Ramsey v. Signal Delivery Serv., Inc.,* 631 F.2d 1210, 1212–13 (5th Cir.1980), the Fifth Circuit upheld the dismissal of a plaintiff's pendent state tort claims for emotional distress on the ground that the common law had been preempted by section 301. The

court noted that "[t]he alleged discriminatory treatment accorded plaintiff is precisely the type of conduct the federal labor laws intended to prohibit...". *Id.* at 1213. Gilliard may not avoid the consequences of his untimely filing of his section 301 claims by characterizing them as actions in tort.

### Conclusion

For the reasons stated above, the Library's motion to dismiss is granted as to Gilliard's §§ 1983 and 1985 claims, his claims relating to the termination of his job with C.I.D., his Title VII claims, and his state tort claims. The Library's motion for summary judgment is granted as to Gilliard's contract claims; and the Library's motion to dismiss is denied as to Gilliard's sections 1981 claims relating to his demotion and to an ongoing pattern and practice of discrimination by the Library.

Discovery will be completed by February 13, 1985 and the pretrial order filed on February 20, 1985.

**IT IS SO ORDERED.**